W. A. SOUTHERLAND, Adm'r, v. WILMINGTON AND WELDON RAILROAD COMPANY.

*Negligence— Agency—Res gestæ —H arsay—Judge's Charge— Competency of Evidence.*

1. What an agent says while doing acts within the scope of his agency is admissible as a part of the *res gestæ*, but what he says afterwards concerning his acts is hearsay and inadmissible.

2. When, in an action against a railroad for negligence in killing the plaintiff's intestate by its locomotive, a witness was allowed to testify what he heard the engineer in charge say *after* the killing occurred: *It is held* to be *error*.

3. Nor was such error cured by the subsequent admission of the engineer upon his examination at the trial that he had said what the witness had testified to.

4. If the evidence was competent to contradict when the statements of the witness conflicted, still it was the duty of the Judge to instruct the jury that they could consider it only for this purpose.

5. Incompetent evidence, which *might* prejudice the minds of the jury, should not be admitted.

6. When it does not appear affirmatively that there was error in the Judge's charge, this Court will assume it to be correct.

This was a CIVIL ACTION, tried before *Shipp, J.,* at Spring Term, 1889, of NEW HANOVER Superior Court.

It was in evidence, on the part of the plaintiff, that his intestate, T. J. Southerland, was run over and killed by one of the trains of the defendant on the 8th day of March, A. D. 1887, at about half-past three o'clock in the afternoon. The train was running northward from Wilmington towards Weldon.

The deceased was crossing the railroad bridge over Smith's Creek, and had reached the abutment at its southern end, when he was struck by the cars.

It was further in evidence that three women were walking on the track, with the view of going over the bridge, and were near the southern end of the bridge when, before the train got in sight, they saw the deceased just coming on the bridge at its northern end, and when they saw the train coming around the curve, about eight hundred yards distant, the deceased, they saw, was half way between the northern and southern ends of the bridge; they called to the deceased "to go back, that the train was coming!" but don't know whether he heard them, and began to signal the train down by waving violently, one with her handkerchief and the others with their hands; the said women standing in the middle of the track at the mouth of the bridge, continued waving and signaling until they had to get off the track to keep the train from running over them; that the track, for about eight hundred yards from the bridge, running southwardly, was straight and unobstructed; that the train, when the women began to wave violently and energetically, was about two hundred and forty yards distant from them; that the length of the bridge was about two hundred feet; that a man could be seen easily on the bridge by a train coming around the curve; that the train, at the time the deceased was struck, was running at the speed of about thirty or thirty-five miles an hour; that the wind was against the

deceased, blowing in the direction from which the train was coming.

The plaintiff offered in evidence the rules for the government of locomotive engineers on the defendant's road, which was admitted without objection, which contained the following rule as applicable to engineers, to-wit: "A hat or any object waved violently by any person on the track signifies danger, and is a signal to stop."

It was further in evidence that on the north side of the bridge there was situated the county poor-house, and that ever since the war, and particularly for ten or fifteen years past, a great many people were in the habit of passing and repassing across said bridge from the poor-house, and from the neighborhood of the same, to the city of Wilmington, and that on certain occasions as many as five hundred persons per day pass over the bridge.

The defendant's counsel contended that the city ordinance did not apply where there were no houses and no streets, and if it did so apply, it was unreasonable, and he prayed the Court to charge the jury that the defendant was not guilty of any negligence by reason of running at a greater rate of speed than that mentioned in the ordinance; which would entitle the plaintiff to recover.

His Honor refused so to charge, and told the jury that, " taking the facts in evidence to be true, and if the train of the defendant was run at such a rate of speed that the engineer could not control it; that if he knew that people were in the habit of crossing said bridge from day to day, that such facts, in connection with the ordinance of the city, which had been read, constituted negligence."

To which refusal, and to the charge so given, the defendant excepted.

It was further in evidence that the engineer in charge of the train, and all other engineers, have in their possession the said rules.

It was further in evidence that the engine had no brake on the driving wheels, and that the train was not stopped by the engineer until it had crossed the bridge, and was about one hundred (100) yards on the other side.

The plaintiff then proved by witnesses that they were present at the coroner's inquest, which was held on the day after the deceased was killed, and heard John R. Bissett, who was the engineer in charge of the train, make certain statements, he having been sworn and examined as a witness before the said coroner's inquest.

The defendant's counsel objected; that Bissett was alive and then in the court-room, and his declaration was not admissible.

His Honor overruled the objection, and said he would admit the statement as a declaration of defendant's agent.

The witnesses were then permitted to testify, and stated, that on the said examination, Bissett was asked if he had seen the women waving to him in front of the bridge, and that Bissett answewed, "No." That Bissett was then asked if he would not have seen them if he had kept a lookout on the engine, and that he answered in a light and slack way, "that he was not looking out; that it was none of his business; that it was as much as he could do to look out for his engine," *to all of which defendant excepted.*

That the said witness, Bissett, during the trial of this cause, was afterwards introduced as a witness by the defendant, and on cross-examination by the plaintiff, admitted that he made the statements testified to by the plaintiff's witnesses.

The defendant objected to this testimony, and upon the objection being overruled by the Court, it excepted.

The plaintiff further offered in evidence a certain ordinance of the city of Wilmington, which is as follows: "No locomotive engine, passenger or burden car, shall be driven

within the limits of the city at a greater speed than five (5) miles an hour, except in ascending a heavy grade, which may require a greater rate of speed, when the rate shall not exceed six (6) miles an hour, and at no time move without a brakesman, in addition to the driver, under a fine for each and every offence of twenty dollars."

It was also in evidence that the place where the deceased was when he was struck by the train, was within the corporate limits of the city of Wilmington; that there was one dwelling on the west side of the track, near the track, about one hundred and fifty (150) yards from the bridge; there were two houses within twelve or fifteen hundred feet of the bridge, near the line of the road, and none others on the line of the road from the bridge for about 2,200 feet; that while upon the map of the city streets are mapped out to Smith's Creek, yet none have been laid out or established nearer the bridge than 800 yards; that on the east side of the track for the eight hundred yards was a farm, and on the west side for that distance was an open stretch for about 1,500 feet, with the exception of the house above mentioned, where the city was largely populated; that for a distance of 800 yards there was a slight grade down to the bridge; that it was in evidence that on that grade a train running forty to forty-five miles per hour can be stopped in three hundred (300) yards.

Verdict for plaintiff; motion for a new trial; motion overruled; judgment for plaintiff and appeal by defendant.

*Mr. J. D. Bellamy*, for plaintiff.
*Messrs. Junius Davis* and *George Davis*, for defendant.

AVERY, J.—after stating the facts: What an agent says while doing any act within the scope of his agency, characterizing or qualifying the act, is admissible as a part of the

*res gestæ*, and may be offered either for or against the principal; but what the agent says afterwards, though his agency may continue as to other matters, or generally, is only hearsay. *Smith* v. *Railroad*, 68 N. C., 107; *McComb* v. *Railroad*, 70 N. C., 178; *Branch* v. *Railroad*, 88 N. C., 575.

It was clearly incompetent, therefore, to show, on the part of the plaintiff, by another witness, what the defendant's engineer, who was in charge of the engine when plaintiff's intestate was killed, said when examined as a witness at the coroner's inquest held over the intestate's body the day after he was killed. The error was not cured when Bissett was subsequently introduced by the defendant, and, on cross-examination by plaintiff, admitted that he made the statement at the inquest which plaintiff's witness had been allowed to repeat. Conceding that it then became competent to impeach him by showing that his former declarations, on oath, were in conflict with his statement as a witness at the trial, such evidence was admissible for that purpose alone, and not to be used as substantive testimony, and it was the duty of the Judge to tell the jury that they could consider it only as tending to contradict Bissett, and not to show that he was negligent in failing to keep a lookout in order to ascertain whether the track was clear of obstructions. *State* v. *Powell*, decided at this term.

His Honor, in his charge to the jury, assumed as a fact not only that the ordinance offered was in force within the corporate limits of the city of Wilmington (which was not controverted), but that there was evidence tending to show that, when the plaintiff's intestate was killed, the defendant's train was running so rapidly that the engineer could not control it, and that he (the engineer) knew that the people were in the habit of crossing daily over the bridge. The instruction sent up was confined to the single proposition that these facts, if proven or admitted, constituted negligence on the part of the defendant. If any question of fact was

left to the jury in reference to which there was other competent evidence, it was calculated to prejudice their minds against the defendant to permit them to consider with it the testimony erroneously admitted, that Bissett (the engineer) had made certain declarations, and that he had answered in a "light and slack" manner when examined before the coroner so soon after the plaintiff's death, and especially when they were required to determine whether an engineer who exhibited so little delicacy of feeling and such indifference in speaking of the death of a human being had carelessly lost control of his engine when the train was approaching a bridge over which he knew persons were almost constantly crossing.

It does not appear affirmatively that the instruction set forth in the case on appeal comprehends the whole of the charge; and if it does not, we must assume that the Judge cautioned the jury not to consider the admission by Bissett that he had made the declarations mentioned. *State* v. *Powell, supra.* Besides, it was not assigned as error that his Honor failed to tell the jury that such admissions were not substantive but only contradictory testimony. *McKinnon* v. *Morrison,* 104 N. C., 354. But the defendant did except to the ruling of the Court admitting proof of the declaration of Bissett before his introduction as a witness, and the testimony was incompetent, being simply hearsay evidence. It is needless to decide whether there was testimony tending to show that the engineer had lost control of his engine, but it was error to submit the question to the jury if there was no evidence to support the affirmative view of it.

It is not necessary that we should discuss the effect of the city ordinance. If the case should again come before us at all, other points may be presented.

There was error in the admission of the testimony as to Bissett's declarations, for which a new trial must be granted.

Error.