HOWELL v. LANSING CITY ELECTRIC RAILWAY CO.

1. STREET RAILWAYS—DUTY TO PASSENGERS.

A street-railway company owes to its passengers a high degree of diligence and care in respect to the character of its rolling stock.

2. SAME—NEGLIGENCE — DEFECTIVE APPLIANCES — QUESTION FOR JURY.

In an action against a street railway for injuries to a passenger, where there was testimony that the brake-rod had broken the day previous to the accident, but was repaired so that the brakeman had no reason to doubt the efficiency of the brake until he tried to use it, and it was found after the accident that the brake-rod was useless for want of a bolt, the question of negligence, when taken in connection with the fact of the accident, was for the jury.

3. SAME—INCOMPETENT MOTORMAN.

There being testimony that the motorman did not know that he could stop the car by reversing the motor, that his tutelage

had been brief, and that he did not turn off the current, but lost his judgment in the emergency, the question of his competency and the character of his conduct was also for the jury.

4. SAME—UNEXPECTED DANGERS.

A passenger on a street car is entitled to reasonable protection against dangers, though imminent and unexpected; and it is not necessarily a defense that, in the face of such a danger, the motorman lost his usual ability to control the car.

5. SAME—JUMPING FROM CAR—IMPENDING COLLISION—CONTRIBUTORY NEGLIGENCE.

A passenger on a street car who jumps therefrom under the excitement due to an imminent collision is not guilty of contributory negligence.

6. SAME—EVIDENCE—INSTRUCTIONS.

Where, in an action against a street railway for injuries to a passenger, plaintiff testified that she knew she did not jump from the car, but was thrown off while standing near the door, holding onto some irons, as the car rounded a curve at a high rate of speed just prior to its collision with another car, and one of the several passengers who were on the car testified that she was thrown against another person, and no one testified to seeing plaintiff jump off, there was nothing requiring an instruction to the jury on the theory that plaintiff jumped from the car.

7. PERSONAL INJURIES—PERMANENCY—DAMAGES—EVIDENCE.

Evidence examined, and *held* to warrant the submission to the jury of the question of the permanency of plaintiff's injuries.

8. SAME—INSTRUCTIONS.

An instruction that, if plaintiff will never recover from her injuries, they are permanent, and she should be awarded such damages for future pain and suffering as the jury may be convinced she will experience, implies the necessity for a finding of "reasonable certainty of permanence."

9. SAME—LIFE EXPECTANCY.

Damages for prospective suffering from permanent injuries must be based on the life expectancy of the injured person at the time of the trial, and not upon that expectancy prior to the injury.

10. SAME—INSTRUCTIONS.

Charge examined, and *held* open to the construction of authorizing a recovery on the latter theory.

11. APPEAL—INSTRUCTIONS—EXCEPTIONS.
> Under the statute, error may be assigned upon a charge though no exception was taken at the trial.

Error to Ingham; Wiest, J. Submitted February 25, 1904: (Docket No. 106.) Decided April 26, 1904.

Case by Sarah E. Howell against the Lansing City Electric Railway Company for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Cahill & Wood*, for appellant.

*Frank L. Dodge* and *C. P. Black*, for appellee.

HOOKER, J. The defendant's motorman lost control of the car he was in charge of, upon a grade on Washington avenue, in the city of Lansing. At the foot of the grade was a switch, and just beyond the switch the track turned upon Franklin avenue, which is intersected by Washington avenue at that point. It was customary for cars to meet and pass at the switch, and, as the uncontrolled car passed over or beyond the switch, the other car was visible, approaching on Franklin avenue a few hundred feet distant, and was seen by the plaintiff across the corner. In her alarm she arose and started for the door, and either went upon the platform and jumped from or was thrown from it, or, as her counsel claim, stood at the door and was thrown from the car as it turned the sharp curve in the road at the corner. The car proceeded until it collided with the other car. That she suffered a serious injury is not denied, but counsel for the defense allege that it was due to her own want of care, which is claimed to have amounted to contributory negligence. The negligence charged was: (1) Allowing the car to be out of repair, whereby the brake was ineffective; (2) putting the car in charge of an incompetent motorman; (3) negligence of the motorman in managing the car.

There was testimony in the case that the brake-rod had broken the day previous to that of the accident, and that it was repaired; that the brakeman had no reason to doubt the efficiency of the brake until he tried to use it, when it failed. There was another brake at the opposite end of the car. The motorman attempted to stop the car with this, but failed. So far as the proof indicates anything upon the subject, the motorman may have been justified in believing that the car could be stopped by the use of the brake. It was found after the accident that the brake-rod was useless for want of a bolt. Evidence was given tending to show the degree of care which had been given to this car, and the failure of the repair to last more than 24 hours is some evidence of the character of such repair.

The defendant owed to its passengers a high degree of diligence and care in transporting them, and that involved the character of the rolling stock. It is not to be expected that a passenger can easily prove the exact particular in which the locomotive which draws his train is defective, or where the bridge which gives way with the train was weak, or the exact particular in which the company is wanting in diligence to prevent or avert a catastrophe. Therefore, in such cases, the circumstances of the accident may sometimes justify an inference of negligence. This was a question which it was proper for the court to leave to the jury, under the circumstances shown.

The same may be said of the competency and conduct of the motorman. There was testimony tending to show that the motorman did not know that he could stop the car by reversing the motor; that his tutelage had been brief; and, although there was proof showing the opposite, the question was one for the jury. Again, there was testimony tending to show that he did not turn off the current, and that he lost his judgment and did not know what to do in the emergency. The passenger is entitled to reasonable protection against all of these dangers, and it is not necessarily a defense that the motorman was con-

fronted by an imminent and unexpected danger, whereby he lost his usual ability to control the car. While proper allowance should be made for such conditions, it is the duty of those who run cars and trains to put them in charge of competent men, and a reasonable degree of presence of mind may be an essential to competency.

Counsel contend that the conclusion is irresistible that plaintiff was not thrown from the car as alleged, but must have jumped from the car when in motion, and insist that there was therefore a failure to prove the case as alleged, and also that contributory negligence was proved. They say, further, that, at all events, that question should have been left to the jury. We are not aware that any one testified to seeing the plaintiff jump from the car. Miss Hazelton testifies that, as the car swung rapidly around the corner, its centrifugal force threw her against some one, while the evidence is strong that it was at this point that the plaintiff was thrown from or left the car, being thrown some 18 or 20 feet, as were several other passengers who jumped from the car. There was no occasion to submit the question of her jumping from the car, as there is no evidence showing it. We think the undisputed evidence shows that it would not have been contributory negligence had she jumped, under the danger and excitement of the occasion, but the contention is made that in such case she could not properly have recovered, by reason of a variance, her declaration alleging that she was thrown from the car. The plaintiff testified that she knew that she did not jump; that she stood at the door looking towards the west, holding onto some irons with both hands; that she was thrown off. There is nothing so inconsistent in the idea that the centrifugal force should have broken her hold and thrown her from the car as to justify the jury in finding that she jumped off, without other evidence, and the court was not called upon to instruct them to consider that theory. Even if counsel are right in contending that she was upon the platform, and not in the door, it does not follow that she jumped off, or

was not thrown off, while, if she was where they contend that she was, it gives added force to the theory that she was the person against whom Miss Hazelton was thrown.

The plaintiff was a married woman, and no damages were claimed by reason of a loss of earnings or earning capacity. The damages were limited to pain and suffering, past and prospective. The claim was made that her injury was permanent, and damages were asked covering the period of her life. We are of the opinion that it was proper to leave the question of permanent injury to the jury, under the testimony given. Dr. Thoms testified that it was his opinion that the injury would not be entirely recovered from. It was an injury to the brain, and her condition up to the time of the trial was shown. The court instructed the jury that, "if the plaintiff will never recover from them, then they are permanent, and she is to be awarded, if she recovers, damages, not only for the pain and suffering she has experienced up to this time, but such damages for pain and suffering and disability as you may be convinced from the evidence she will experience in the future as a result of such injuries;" and we think this implied that a finding of "reasonable certainty of permanence" was essential.

Counsel introduced the mortality tables, for the purpose of proving plaintiff's expectancy of life. It was his theory that her prospective pain and suffering should be compensated for. It is to be supposed that her pain and suffering up to the time of trial were included. It was also proper to include damages for prospective suffering for such time as the jury should find that she would suffer them, but not beyond her expectancy of life, *and this means her expectancy at the time of the trial.* Counsel contend that the jury were permitted to allow damages on the basis of the expectancy before she was injured. If so, this was manifestly wrong. See *Olivier* v. *Railway Co.,* 134 Mich. 367 (96 N. W. 434). A man who must contemplate death may be supposed to have more intense mental suffering than others, and may recover accordingly.

But he cannot be supposed to be likely to suffer such in-creased anguish beyond the time that he in his present condition is likely to live. We think the charge is open to such construction. The court said to the jury, "You are to determine from the evidence the probable period it may reasonably be expected *she might have lived in the condition she was at the time of this injury;*" and the jury might naturally infer that damages should cover that period.

"The plaintiff may not live for any particular period, and you should consider the contingencies of sickness, and you should make a reasonable deduction for such contingency, and for others, if any, that the evidence may disclose might lessen her reasonable prospect of living for the period mentioned in the table of mortality. * * *

"She should receive the present worth of such future damages. It is at your discretion to give such an amount as you may think right for mental suffering and physical pain and suffering endured by the plaintiff up to this time and from this time forward, and for such pain and suffering as you are satisfied from the evidence in the case that she may experience in the future."

Again, in response to a question from a juror, he said:

"*A Juror:* The question we want to ask is, What is the expectancy of this woman's life from this date on?

"*The Court:* In this State, gentlemen, we have what is known as a 'table'— Of course, it does not apply to any one in particular, but it is a table of expectancy that we use in the trial of lawsuits. By the table a person in good health at the age of 25 may reasonably expect to live for 38 years to come. That table is not final. This case, of course, *you will decide having in mind what the evidence discloses regarding the plaintiff's health previous to the accident,* and, of course, that table will be something of a guide to you, but you will decide the case, of course, from the evidence regarding her health especially previous to the accident. If she was a person of fairly good health at that time, then it is reasonable to suppose that she may have expected to live 38 years; but, as I said in my charge, you must take into consideration the possibility of sickness, that she may not live any considerable length of time, but reach such a conclusion from all the evidence in the case as appears reasonable to you."

This question showed that this juror correctly had in mind the expectancy from the time of the trial, but the answer given by the court to his question indicated that his understanding was incorrect, and that the proper period was to be determined upon her condition previous to the accident. We think that, had this particular point been discussed below, the circuit judge would have noted the distinction, which seems to have escaped both court and counsel upon the trial, and is raised here for the first time. Even an exception to the charge would probably have led the judge to correct this error. But, under the statute which permits counsel to assign error upon a charge without exception, we have no alternative but to reverse the judgment. We have before expressed doubts of the wisdom of a law which subjects parties to the expense of new trials upon points not raised in the lower courts.

The judgment is reversed, and a new trial ordered.

MOORE, C. J., CARPENTER and MONTGOMERY, JJ., concurred. GRANT, J., took no part in the decision.