NAOMI SCALES v. FRANK LEWELLYN AND THE CITY OF WINSTON-SALEM.

(Filed 15 November, 1916.)

**1. Evidence—Impeachment—Witnesses—Contradictory Statements—Bias.**

When the necessary grounds for impeaching the testimony of a witness is laid on cross-examination, it is competent to show by another witness contradictory statements he had previously made, and which tended to show his temper, disposition, and conduct in relation to the case.

**2. Principal and Agent—Contracts—Independent Contractor—Work Inherently Dangerous.**

Where a principal is sought to be held responsible in damages for the negligence of his independent contractor, on the ground that he cannot escape liability if the work contracted to be done is "inherently dangerous," the test is not whether a man of ordinary prudence would have anticipated that injury would have ensued from this work, but whether the work was of itself full of risks, perilous, hazardous, and unsafe to others while being done; and where the raising or elevation of a tenant-house had been let to an independent contractor, and the roof of the porch fell and injured a person through the negligence of the independent contractor, the principal is not responsible.

CIVIL ACTION tried in FORSYTH County Court, *Starbuck, J.,* presiding, upon these issues:

1. Was the plaintiff injured by the negligence of the defendant F. P. Lewellyn, as alleged in the complaint? Answer: "Yes."

2. Was the defendant F. P. Lewellyn an independent contractor, as alleged in the answer of the defendant city of Winston-Salem? Answer: "Yes."

3. Was the work contracted for inherently dangerous? Answer: "Yes."

4. Is the defendant the city of Winston-Salem liable to the plaintiff for the negligence of the defendant Lewellyn? Answer: "Yes."

5. If so, what damage, if any, is the plaintiff entitled to recover? Answer: "$250."

From the judgment rendered, both defendants appealed to the Superior Court of said county. The appeal was heard by *Long, J.,* at September Term, 1916, who granted a new trial as to the defendant Lewellyn and affirmed the judgment as to the city of Winston-Salem. From this judgment the plaintiff and the city of Winston-Salem appealed to the Supreme Court.

*Louis M. Swink, Gilmer Korner for plaintiff.*
*Holton & Holton for defendant Lewellyn.*
*Manly, Hendren & Womble for the city of Winston-Salem.*

BROWN, J. The plaintiff sues the defendant Lewellyn and the city of Winston-Salem for damages for injuries sustained by her from the falling of a porch and dwelling-house which the defendant Lewellyn had contracted with the defendant the city of Winston-Salem to raise. The city had raised the grade on Third Street, leaving below the level of the street and without convenient means of access to it a house occupied by the plaintiff as tenant. There were eight other houses similarly situated. The city, with the knowledge and consent of the owner of these houses, at its expense, contracted with the defendant Lewellyn to raise them to the level of the street. It was necessary to raise the house occupied by the plaintiff some 9½ feet. The house was not being moved from its position, but simply raised.

Prior to the night of 1 October, 1915, the contractor had by means of pulleys, blocks, and jack screws raised the house securely from its foundation, but, as alleged, had carelessly and negligently failed to properly secure and support the front porch, causing it to collapse, throwing her to the ground.

There is evidence tending to prove that the defendant Lewellyn, instead of supporting the porch with temporary pillars or blocks, as is

customary in such work, nailed two braces, one end to the edge of the porch and the other to the roof of the house.

### THE APPEAL BY THE PLAINTIFF.

On the trial before the judge of the county court the plaintiff introduced one Clara Smith, who testified that she saw the porch break loose and fall; that plaintiff fell under the floor; that Clara Smith helped to get her out; and saw that she was badly bruised in places; that she put turpentine on her and asked her if she, Naomi, was not killed.

On cross-examination the defendant laid the necessary grounds for contradicting and impeaching her by the testimony of one Davis. Defendant offered to prove by Davis a conversation with Clara Smith for the purpose of contradicting and impeaching her. The substance of the proffered testimony is that Clara Smith told the witness Davis that she did not know much about this case; that she was there and helped attend her, saw her a few days afterwards and plaintiff told her that she was not much hurt, but was hurt enough to have a lawsuit against the city; that plaintiff said she was going to lay in a week or two and appear like she was seriously injured; that she, Clara Smith, did not see that plaintiff was hurt very much. This testimony was excluded by the judge of the county court. We concur with the judge of the Superior Court that this was error. The testimony of Davis tended to impeach and contradict that of Clara Smith and the foundation for the introduction of such testimony had been laid upon cross-examination.

It is well settled that contradictory testimony of this character is competent, not only because it is contradictory, but in this case because it tended to show the temper, disposition, and conduct of the witness Clara Smith in relation to this case. *S. v. Patterson*, 24 N. C., 353; *In re Craven*, 169 N. C., 566; *S. v. Lewis*, 133 N. C., 653; *S. v. Crook*, 133 N. C., 672.

The judgment of the Superior Court upon the plaintiff's appeal is Affirmed.

The costs of that appeal will be paid by the plaintiff.

### APPEAL BY THE DEFENDANT CITY OF WINSTON-SALEM.

This defendant assigns error because the trial judge refused to instruct the jury upon all the evidence, if it was believed, that the jury should answer the third issue "No" and the fourth issue "No." The judge of the Superior Court sustained the ruling of the trial judge. The said defendant excepted and appealed to this Court.

We are of opinion that upon all the evidence the work upon which the contractor was engaged was not "inherently dangerous." The trial judge seemed to be of opinion that if a man of ordinary prudence would have anticipated that injury would have ensued from this work, then it is inherently dangerous. This is not the test. The word "dangerous" means attended with risk, perilous, full of risk. *West v. Ward,* 77 Iowa, 323. Dangerous as defined by Webster means attended or beset with danger; full of risk; something which in itself is perilous; hazardous and unsafe.

It is a matter of common observation that houses in this day are moved from one part of a town to another with perfect safety, and that they are raised and elevated with more ease and immunity from danger than they can be moved. In this case the contract was to raise the dwelling, and not to move it. The house was raised with perfect safety, but the alleged negligence of the contractor to properly brace the porch caused it to fall when the plaintiff walked out on it.

We have recently said that "The rule in regard to 'intrinsically dangerous' work is based upon the unusual danger which inheres in the performance of the contract, and not from the collateral negligence of the contractor. Mere liability to injury is not the test, as injuries may result in any kind of work where it is carelessly done, although with proper care it is not specially hazardous." *Vogh v. Geer,* 171 N. C., 672.

The work being done in that case was the erection of a concrete building several stories in height. In referring to it we said: "We find no precedent that holds that this work is of that character which the policy of the law requires that the owner shall not be permitted to free himself from liability by contracting with another for its execution."

In *Laffrey v. Gypsum Co.,* 83 Kans., 347, the Court said: "No effort will be made to precisely define the expressions 'intrinsically dangerous' or like phraseology, as used in the authorities. Regard must be had to the reason of the principle and the consequence flowing from its application in the given situation. . . . It is clear from the cases cited and many others in which the subject has been considered that the intrinsic danger of the undertaking upon which the exception is based is the danger which inheres in the performance of the contract, resulting directly from the work to be done, and not from the collateral negligence of the contractor."

The case under consideration is evidently one where the injury was caused by the negligent failure of the contractor to prop up the porch, and not from any inherent danger in the simple and everyday operation of raising a house by means of jack screws.

32—172

As said by *Lord Cochran* in *Bower v. Peate,* 1 Q. B. Div., 321: "There is an obvious difference between committing work to a contractor to be executed from which, if properly done, no injurious consequences can arise, and handing over to him work to be done from which mischievous consequences will arise unless preventive measures are adopted."

The case of *Davis v. Summerfield,* 133 N. C., 325, we do not think sustains the contention that the work contracted for by the city of Winston-Salem was of that character which in itself is inherently dangerous, so that the city could not relieve itself from liability for the manner in which the work was done. The real ground of that decision was that the defendant owed the plaintiff a duty, which it could not delegate or get rid of, to notify him of his intention to do work on his (the defendant's) premises which might cause harm to the plaintiff's adjoining property if certain precautions were not taken. *Embler v. Lumber Co.,* 167 N. C., 462.

We think the court erred in not giving the prayer for instructions. The judgment of the Superior Court is reversed. The costs of this appeal will be taxed against the plaintiff.

New trial.