W. J. WILKINS ET AL. v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 10 October, 1917.)

1. **Railroads — Negligence — Fire Damage—Pleadings—Burden of Proof— Nonsuit.**

    In an action for damages against a railroad company for negligently setting fire to plaintiff's lands, allegations in the complaint that the fire started from defendant's locomotive on its foul right of way, etc., is sufficient to include, as its origin, sparks thrown from the engine cab, and a judgment of nonsuit will not be granted upon the ground that such acts of defendant's employees were unauthorized, for the burden in such respect is upon defendant to show the exercise of due care to avoid the injury.

2. **Evidence—Principal and Agent—Declarations—Corroboration.**

    Where defendant's agent, a witness, has testified that he knew the origin of a fire which damaged the plaintiff's land, and that it did not come from the defendant's engine or right of way, it is competent, in impeachment of his testimony, and not as substantive evidence, to show that after the occurrence he had stated to the witnesses testifying, that it had come from the engine.

3. **Negligence — Fire Damage — Cause — Two Fires — Evidence — Trials— Nonsuit.**

    Where the plaintiff's evidence tends to show, in an action to recover fire damage to his lands, that the fire originated from defendant's locomotive, and on defendant's behalf, that it was caused by a fire on the west side of the right of way, for which it was not responsible, and that it had put out the fire it had caused, which the plaintiff denied, an instruction is held correct, that if the fire from the west side of the track burned the land, or if the two fires met, and the fire from the engine would not have gone on the land but for the fire from the west side, in either event to answer the issue of negligence in the negative; and a judgment of nonsuit, on the theory that the jury could not ascertain which fire caused the injury, is properly denied.

**4. Negligence—Fire Damage—Evidence—Direction of Wind.**

Where the evidence is conflicting as to whether fire damages claimed in an action against a railroad company came from defendant's locomotive, or from another fire for which it is not responsible, plaintiff's testimony as to the direction of the wind at the time, tending to sustain his contention, is competent.

**5. Evidence—Declarations—Corroborative.**

Declarations of a witness made to a party to the action, tending to corroborate the evidence he had already given, is competent for that purpose.

CIVIL ACTION tried before *Lyon, J.,* at the April Term, 1917, of ONSLOW.

This is an action to recover damages for the alleged negligence of the defendant, which the plaintiffs claim resulted in the damage to their lands.

The specifications of negligence in the complaint are:

1. That by reason of defective spark arrester on engine operated by defendant on its right of way, the defendant carelessly and negligently permitted fire to be communicated from its engine over lands to spread to plaintiffs' lands.

2. The defendant carelessly and negligently permitted its right of way to be foul with grass and inflammable matter.

The elements of damages alleged are:

1. That said fire destroyed large quantities of trees, timber, pine straw, woodsmould, lightwood, and other things of great value.

2. And did burn and bake plaintiffs' soil.

The evidence for the plaintiffs tended to prove: That on the morning of 22 April train No. 320, from Wilmington to New Bern, passed Folkstone, and that there was and had been a fire burning on the west side of the railroad for a day or two, but on this morning, as the train passed the section-house, sparks were negligently and carelessly thrown from the engine, or emitted from the smokestack, falling on the right of way of the defendant company; that the right of way was in a foul condition, and that it was covered with inflammable matter, such as wiregrass and dead grass; that this fire burned over to the public road, which paralleled the railroad at that point, or nearly so; that two dead pine trees were set on fire by this fire that was thrown or emitted from the engine; that these trees were. left burning there; that the fire from. those trees set the woods on fire, and that the fire communicated from that land to the plaintiffs' land and burned over some 425 acres, or about that, and that this fire did considerable damage to their land; that the damage on the 200 acres was $4· per acre; that there was pine and other growth there, and that the damage to the 200 or 265 acres was $4 for the pine and oak and $200 for all the holly, and that the woodsmould was $10

per acre, and that it was all caused by the negligent burning of the woods.

The evidence of the defendant tended to prove: That the fire that burned over the plaintiffs' land was not set out by its engine, or by any one connected with the defendant company; that there was, and had been for several days, a fire burning on the west of the railroad, and that on Tuesday evening it burned up through the bay or near the railroad; that on Saturday morning it crossed the railroad, north of Folkstone, and crossed below, down at some other place, and contends that the fire that was near the section-house was completely extinguished the day that it got out there, and that the other fire that crossed the railroad above the section-house set the two pines afire; that the two fires connected; that the fire from the west burned down to where the other fire was, and that this was the fire that set the trees on fire, and that if the fire that burned the plaintiffs' land caught from the trees, they were set by the fire from the west of the railroad, and that there is no evidence that the defendant set that out or was negligent in permitting the fire on the west of the railroad getting out; that the damages claimed by the plaintiffs are excessive; that an examination of this land was made soon after this fire on the following week, and taking the entire tract of land that was burned over, including the fence, holly, pine, and undergrowth, the damages did not exceed $1 per acre.

There was also evidence on the part of the plaintiff tending to prove that the fire which came from the west side of the railroad was extinguished and did not pass to his land, and evidence on the part of the defendant that this was the fire which caused the damage.

The defendant introduced John Pugh, its section master, who testified among other things, as follows: "I have traced down the Wilkins fire, and I know where it came from. I found that the Wilkins fire was the forest fire that came from the west of the railroad."

This witness was asked, on cross-examination, if he had not told several parties, naming them, that the fire came from the engine of the defendant, and he denied doing so.

The plaintiff was then permitted to prove by these persons that the witness had told them the fire came from the engine, and the defendant excepted.

His Honor explained to the jury that this evidence for the plaintiff could not be considered by them as substantive evidence as to the origin of the fire, and that it was only competent on the credibility of the witness.

There was a motion for judgment of nonsuit, which was overruled, and the defendant excepted.

WILKINS *v*. R. R.

His Honor charged the jury, among other things, as follows:

"On the other hand, if you should find that the fire that burned the land was the fire that came from the west side of the railroad, then you would answer the issue 'No,' or if you find that the engine was properly equipped with spark-arrester, and that the engine and train was under proper control and being properly handled, and that the fire did escape from the engine, but did not ignite or burn on the right of way (or set fire to the woods by the right of way), then the defendant would not be liable, because they are not required to keep the woods free from combustible matter."

To so much of the above charge as is included in the parentheses the defendant excepted.

"If you find from the evidence that the first which was seen in the Juniper Swamp pocoson on Thursday or Friday before Saturday on which the plaintiffs claim the fire burned around Folkstone was the fire that burned the lands of the plaintiffs, you will answer the first issue 'No.'

"The plaintiffs claim that the fire which burned over their land was put out by a freight train going toward New Bern (No. 320); hence you will not consider any contention that it was put out by the freight train going toward Wilmington (No. 321), for same has no connection with the alleged origin of the fire in controversy.

"The plaintiffs are not contending that the fire that caused damage to the plaintiffs' woods was put out from the freight train passing Folkstone from New Bern to Wilmington (No. 321). If you do not find from the evidence, and by its greater weight, as to how the fire did burn over the plaintiffs' land, then you will answer the first issue 'No'—that is, if you are not satisfied from the evidence, and by its greater weight, that the fire was caused by the negligence of the defendant, you will answer the first issue 'No'; but if you are so satisfied, you will answer it 'Yes.'

"If the two fires—one from the west and the one originating on the east—if these two fires met, and the fire on the east side would not have burned over the woods but for the fire on the west, then the defendant would not have been liable, because the fire must have originated from the negligence of the defendant to make the defendant liable."

There are other exceptions, which will be referred to in the opinion.

There was a verdict and judgment in favor of the plaintiffs, and the defendant appealed.

*E. M. Koonce and G. V. Cowper for plaintiffs.*
*Frank Thompson and L. A. Varser for defendant.*

ALLEN, J.   The motion for judgment of nonsuit is upon the ground that the evidence shows that the sparks did not come out of the smokestack of the engine, but was thrown from the cab, and as this was unauthorized and not in the performance of a duty, the defendant is not liable therefor, and upon the further ground that the two fires met, for one of which the defendant was not responsible, and that it is impossible to say which fire caused the damage.

The answer to the first position is, that the complaint does not allege that the fire came from the smokestack, but from the engine; and when evidence is offered, conforming to the allegations of the complaint, which connects the defendant with the origin of the fire, a judgment of nonsuit cannot be entered, because the burden is then on the defendant to show the exercise of due care to avoid injury.   *Currie v. R. R.,* 156 N. C., 419.

The second position involves a question of fact in controversy, which could only be settled by the jury.

The evidence for the plaintiffs, if believed, established the fact that the fire from the west side of the track was stopped at the public road and did not go on the lands of the plaintiffs, while the evidence for the defendant showed that the fire which came from the engine was extinguished and never reached the plaintiffs' land.

With this sharp conflict between the plaintiffs and defendant, his Honor adopted the only course open to him by submitting the queston to the jury under an instruction that if the fire from the west of the track burned the land, or if the two fires met, and the fire that came from the engine would not have wone on the land but for the fire from the west, in either event to answer the issue in favor of the defendant.

The evidence of the declarations of the witness Pugh do not fall within the rule excluding the declarations of an agent as to a past occurrence, and was clearly competent for purposes of impeachment, to which it was confined.

The witness had testified for defendant that he knew where the fire came from which burned the plaintiffs' land, and that it was from the west of the track, and the plaintiff was permitted to impeach him by proving by a number of witnesses he said the fire came from the engine.

*Pate v. Steamboat Co.,* 148 N. C., 573, and *Morton v. Water Co.,* 168 N. C., 587, are directly in point in support of the ruling admitting the evidence.

In the *Pate case,* which was an action to recover damages for death by drowning, the plaintiff contended that the boat was not properly equipped for rescuting passengers who fell overboard, and that the bateau used for that purpose was in bad condition.   The defendant introduced one Jackson, who was operating the bateau, who testified that the bateau was in good condition, and the plaintiff was permitted to prove by one

Glover that Jackson told him the bateau was leaking. The Court held that the evidence was competent, and said: "Of course, the declarations of the boat hand, made after the occurrence, are incompetent for the purpose of proving the dangerous condition of the bateau. *Southerland v. R. R.*, 106 N. C., 100. But, having been examined by the defendant as its witness as to the condition of the bateau, it was competent to impeach or contradict his evidence upon that point by his declarations on that subject to Glover. To lay the foundation for offering such impeaching evidence, it was proper to ask the witness, on cross-examination, the question objected to."

This was quoted and approved in the *Morton case.*

These are the exceptions relied upon by the defendant, but we have considered all that are dealt with in the brief, and we find no error.

It was competent to show the direction of the wind on the day of the fire, and that sparks fell from the two dead trees which were burning off the right of way, as the evidence for the plaintiff tended to prove that the fire which caught on the right of way set these trees on fire.

The declaration of Batts to one of the plaintiffs to the effect that he had been in the swamp, trying to put out the fire, was competent as corroborative of Batts, who was a witness.

The evidence of damages to a grapevine to the value of $15 was properly admitted and was covered by the complaint, which, after enumerating certain property which was destroyed, said, 'and other things of great value.'

No error.