S. L. PARRISH, ADMR. OF G. F. PARRISH, v. R. P. RICHARDSON.

(Filed 13 November, 1918.)

1. Master and Servant — Employer and Employee — Safe Place to Work— Negligence—Mines.

The plaintiff's intestate, a miner in the defendant's employment, was upon a ladder in defendant's 550-foot shaft, 475 feet from the bottom, and was struck and thrown down to his death by one or more other miners falling upon him. There was evidence tending to show that, had the ladders leading down into the mines been properly arranged 100 feet from the bottom, with platforms at certain intervals, with alternating holes, through which the ladders leading further below could be reached, the falling of the other employees upon the intestate would have been prevented, and that the platforms above described were ordinarily used in properly constructed mines: *Held*, sufficient to be submitted to the jury upon the question of defendant's actionable negligence and its being the proximate cause of the injury.

2. Master and Servant — Employer and Employee — Negligence—Notice— Knowledge—Principal and Agent—Vice Principal.

Where there is evidence tending to show the defendant's negligence in failing to provide platforms in his 550-foot shaft to his mine for a distance of 100 feet from the bottom, and that the death of the plaintiff's intestate, a miner therein, was thereby caused, testimony that the witness told the defendant's underground foreman, three weeks before the injury, that the shaft should be finished by putting in the partitions and platforms, and his reply that he did not have the lumber to finish it, is competent to show that the defendant was previously made aware, through his vice principal, of the dangerous conditions, and fixed him with knowledge thereof, and was not objectionable as being a narrative of a past transaction occurring after the injury. *Southerland v. R. R.*, 106 N. C., 100, cited and distinguished.

ACTION tried before *Shaw, J.*, at July Term, 1918, of DAVIDSON.

The intestate was killed by being thrown from the ladder-way of the Rich-Cog Mine, a gold mine in Montgomery County, belonging to and operated by defendant. The issues of negligence, assumption of risk, and damage were submitted to the jury, who found them against defendant and assessed damage at $4,000, which, by consent, was reduced to $2,500. From the judgment rendered defendant appealed.

*J. C. Bower and J. R. McCrary for plaintiff.*
*Brooks, Sapp & Kelly for defendant.*

BROWN, J. The intestate was employed as a miner by defendant, and on 9 August, 1917, was killed by being knocked off the ladder-way running down the shaft from the surface of the earth to the bottom of the mine, a distance of about 550 feet. The allegation of negligence is substantially as follows:

That the intestate was descending the ladder-way in the mine, and was at the time about the depth of 475 feet, when suddenly another employee of the defendant, Peter Green, fell from the ladder-way, above the intestate, onto another employee of the defendant, one Arch Davis, knocking him from the ladder-way, and that as a consequence one or both of said named employees fell on the intestate, knocking him from the ladder and hurling him a distance of some 75 feet to the bottom of the shaft, and thereby crushing his head and body, in consequence of which he died within about one and one-half hours thereafter.

That the injury and death of the intestate as above set out was caused by the carelessness and negligence of the defendant and his agents and employees in the following particulars:

That the defendant failed to provide proper platforms for the last 100 feet of the shaft in said mine, which was about 500 feet deep at that time; that for the first 450 feet various platforms were provided for the use and protection of the employees in going to and from their work, each platform being of heavy planking, and the platforms being about 25 or 30 feet apart and covering the shaft opening, with a ladder hole opening at alternate sides of each successive platform, so that if any object should fall from any upper part of the ladder it would be unable to fall further than the next platform below it, and that if these platforms had been provided for the last 100 feet of the shaft, when the employees, Peter Green and Arch Davis, fell from the ladder they would have either fallen on another platform which should have been placed a short distance below them, and not have struck the intestate at all, or if they had struck him he would have fallen on the needed platform and would not have been thrown to the bottom of the shaft and killed.

The defendant excepted to the testimony of Walter Parrish, a miner, that he said to Russell, the underground foreman of the mine, three weeks before intestate was killed, that the shaft ought to be finished by putting in the needed partitions and platforms; that Russell replied that it ought to be finished and the remaining platforms put in, but that he did not have the timber then to finish it.

We think this evidence competent to fix knowledge upon the part of defendant of the condition of the ladder-way. Russell was his representative and vice-principal, and the witness, a miner, made complaint to him. This was three weeks before intestate was killed, and yet no effort whatever appears to have been made to construct the needed safety platforms.

This declaration of Russell was not a narrative of a past transaction and made after the injury, as in *Southerland v. R. R.,* 106 N. C., 100. It was notice to Russell of the damage, and it was proper to introduce the entire conversation, showing why the platforms had not been constructed.

The declaration was made in the line of duty by the foreman, and is as competent as if made under similar circumstances by the principal. *Younce v. Lumber Co.,* 155 N. C., 239; 10 Cyc., 647; *McEntyre v. Cotton Mill,* 132 N. C., 599.

The motion to nonsuit was properly overruled.

The manner in which a ladder is constructed in all well managed mines is thus described by witness Hill, a miner of forty years experience in England and this country:

"When we make a ladder-road down the shaft, instead of putting one continuous ladder-way, we alternate and go down for 20 or 25 feet. We extended the ladder down about 25 feet onto a platform, and on one side of the platform come down another 25 feet, and kept on that way all the way down, so that if anything fell, instead of falling from the top to the bottom it would not fall any further than one of these platforms, so that the holes would not be straight under each other; would have to go from one side to the other to go any further down the shaft."

The witness also says that after leaving the 450-foot level in this mine, it was one continuous ladder-way without platforms to the bottom, a distance of 95 feet.

Witness Shirley, a miner of thirty years experience in fifty different mines, says: "The ladder platforms are 25 or 30 feet apart. If a man should fall they would catch him, and if he wanted to rest on one he could go stand up and rest, or sit on one, or lie on one. The main purpose of the platform is to catch him. One caught me one time."

A bare recital of the evidence is sufficient to show that the platforms are safety devices and resting-places of the greatest importance, and, in our opinion, to omit them for a space of 95 feet from the bottom of the mine was gross negligence.

But the learned counsel for defendant contends that the absence of the platforms was not the proximate cause of intestate's death. The cause of the death was being hurled from the ladder 100 feet to the ground. If the safety platform had been constructed it would probably have saved intestate's life. At least, that is a reasonable inference the jury were at liberty to draw. As the experienced miner, Shirley, testifies, the main purpose of the platform is to catch a falling miner. "One caught me once."

The entire controversy was presented to the jury in a very clear, full and impartial charge, of which the defendant has no reason to complain. If he had done his duty—procured the lumber and constructed the platforms on the lower part of the ladder, as he had all the way above—a valuable life would in all probability have been saved.

No error.