ROBERT E. HUBBARD v. SOUTHERN RAILWAY COMPANY.

(Filed 14 December, 1932.)

1. **Master and Servant E a: E b—This action held governed by Federal Employers' Liability Act, and evidence of negligence was sufficient.**

   An action for injuries sustained by the plaintiff while engaged in interstate commerce as an employee of the defendant, a common carrier by rail, arises under the Federal Employers' Liability Act, and in this case *held,* the evidence tested by the Federal rule was sufficient to take the case to the jury on the issue of the defendant's negligence.

2. **Evidence D a—Declaration of past occurrences is inadmissible as substantive evidence but may be competent to impeach witness.**

   A declaration of an agent which is merely a narration of a past occurrence is not admissible for or against the principal even though the act referred to was within the scope of the agent's authority and his agency was continued, such declaration not coming within the *res gestæ* rule, but such declaration may be admissible for the purpose of contradicting and impeaching the testimony of the agent given upon the trial.

3. **Trial E d—Charge stating evidence admitted solely to impeach witness as substantive evidence on material point in reversible error.**

   Where testimony of a declaration by an agent of a past occurrence is admitted in evidence solely for the purpose of contradicting and impeaching the testimony of the agent given upon the trial, it is error for the court in his charge to recount such evidence as an admission of negligence by the agent, but whether the error is cured by a later instruction, given after the jury was recalled from deliberation, correctly limiting the evidence but not retracting the prior instruction, need not be considered where a new trial is awarded upon other grounds.

**4. Trial E g—**

Where the charge of the court contains conflicting instructions on a material point it will be held for reversible error upon exception.

**5. Master and Servant E c—Rule of assumption of risk under Federal Employers' Liability Act.**

Except in cases where the employer's violation of a statute enacted by Congress for the safety of employees contributes to the injury, an employee assumes under the Federal Employers' Liability Act the risks normally incident to the employment, but he does not assume extraordinary risks or those resulting from the employer's negligence unless and until he is made aware of such special risks or they become so obvious that a man of ordinary prudence would observe and appreciate them, but he will not be held to assume such special risks even under these circumstances if the employer assures him the matter will be remedied and the danger is not so imminent that a man of ordinary prudence would refuse to rely upon the employer's assurances.

**6. Same—Matters to be proven by defendant upon plea of assumption of risk under Federal Employers' Liability Act.**

Where assumption of risk is available to a defendant in an action under the Federal Employers' Liability Act it is required that the defendant plead the defense, and the burden of proof on the issue is upon him, but it is necessary only that he prove that the injury resulted from an ordinary risk incident to the employment, or, if the injury resulted from a special risk, that such risk was fully known to the employee and appreciated by him or was so obvious that a man of ordinary prudence would have observed and appreciated it, and an instruction that the burden is on the employer to prove that the employee assumed all risk of any dangers which were inherently incident to the employment is inexact, the employee being conclusively presumed to have knowledge of the risks ordinarily incident to the employment.

**7. Damages F a—Mortuary table is evidentiary only, and health and earning power of plaintiff must be considered in fixing damages.**

The statutory mortuary tables are evidentiary only, and the expectancy therein given for a particular age must be considered by the jury together with evidence of the health, constitution and habits of the plaintiff and his earning power in determining the amount of damages to which he is entitled as a result of a negligent injury totally and permanently disabling him.

APPEAL by defendant from *Sinclair, J.,* at March Term, 1932, of SAMPSON.

Civil action to recover damages for an alleged negligent injury.

Upon denial of liability, and issues joined, the jury returned the following verdict:

"1st. Was plaintiff injured by the negligence of the defendant as alleged in the complaint? Answer: Yes.

"2nd. Did plaintiff, by his own negligence, contribute to his injury as alleged in the answer? Answer: No.

"3rd. Did plaintiff assume the risk as alleged in the answer? Answer: No.

"4th. What damages, if any, is plaintiff entitled to recover? Answer: Forty-five thousand dollars ($45,000)."

Judgment on the verdict for plaintiff, from which the defendant appeals, assigning errors.

*H. H. Hubbard and A. McL. Graham for plaintiff.*
*Richard C. Kelly, Butler & Butler and H. E. Powers for defendant.*

STACY, C. J. The defendant is a common carrier by railroad, engaged in interstate commerce, and the plaintiff was employed by the defendant in such commerce at the time of his injury. The case, therefore, is one arising under the Federal Employers' Liability Act. *Cobia v. R. R.,* 188 N. C., 487, 125 S. E., 18; *Soles v. R. R.,* 184 N. C., 283, 114 S. E., 305.

Plaintiff was injured 13 June, 1930, near Charlotte, N. C., while engaged in the discharge of his duties as helper to C. R. McClure, signal maintainer and foreman over a section of road twelve or fourteen miles in length. The plaintiff had completed his third year at the University of North Carolina as a student in the engineering department, and needed some practical experience for graduation. He was 21 years old and in good health.

On the morning in question, while undertaking to raise or set a heavy pole in the transmission line, which pole was approximately 35 feet long and weighed about 1,000 pounds, it "turned" or "careened" and fell upon the plaintiff, injuring him severely.

The allegations of negligence are: (1) failure to warn plaintiff of dangers, (2) insufficient help, (3) failure to furnish necessary tools and appliances, (4) carelessness of fellow employees. The defendant denies any negligence on its part and pleads contributory negligence and assumption of risk on the part of the plaintiff.

The evidence is conflicting on the issue of liability, but, tested by the Federal rule, as announced in *Western & Atl. Ry. Co. v. Hughes,* 278 U. S., 497, that "more than a scintilla of evidence" must be offered to carry the case to the jury, we think it is sufficient to say, without detailing the testimony of the several witnesses, the motions to nonsuit were properly overruled.

C. R. McClure, a witness for the defendant, was asked by the plaintiff, on cross-examination, if he did not tell plaintiff's father at the hospital,

in discussing the injury, that it was his fault, in that, he pushed the pole out of line causing it to fall on the plaintiff. The witness denied making this statement.

The testimony of R. H. Hubbard, father of plaintiff, was then offered in reply to contradict the witness McClure. He said: "Mr. McClure came to the hospital the first night I was in Charlotte, Saturday night (following the injury on Friday), and introduced himself to my wife and me and had with him two young men, Mr. Burnette and Mr. Walker. I asked him how my son got hurt and he said that the three of them were with him; said that they were trying to raise this pole and it was in a bad place, and the pole was so heavy that they could not raise it and it fell on him. Mr. McClure told me that he was very much hurt and worried over it; that he felt like he was the cause of the boy being injured." Objection; exception. Burnette and Walker said they did not hear this alleged conversation.

It is the rule with us that what an agent or employee says relative to an act presently being done by him within the scope of his agency or employment, is admissible as a part of the *res gestæ,* and may be offered in evidence, either for or against the principal or employer, but what the agent or employee says afterwards, and merely narrative of a past occurrence, though his agency or employment may continue as to other matters, or generally, is only hearsay and is not competent as against the principal or employer. *Pangle v. Appalachian Hall,* 190 N. C., 833, 131 S. E., 42; *Johnson v. Ins. Co.,* 172 N. C., 142, 90 S. E., 124; *Scales v. Lewellyn, ibid.,* 494, 90 S. E., 521; *Southerland v. R. R.,* 106 N. C., 100, 11 S. E., 189; *Morgan v. Benefit Society,* 167 N. C., 262, 83 S. E., 479; *Hamrick v. Tel. Co.,* 140 N. C., 151, 52 S. E., 232; *Hill v. Ins. Co.,* 150 N. C., 1, 63 S. E., 124; *Bumgardner v. R. R.,* 132 N. C., 438; 43 S. E., 948; *Rumbough v. Imp. Co.,* 112 N. C., 751, 17 S. E., 536; *Smith v. R. R.,* 68 N. C., 115; 22 C. J., 467; 10 R. C. L., 990.

Notwithstanding the rule just stated, it has been held in a number of cases that what an agent or employee says, even though narrative of a past occurrence, may be offered in evidence, not for the purpose of fixing liability upon the principal or employer, but to contradict or to impeach the agent or employee, when his previous statement is at variance with his testimony given on the trial. *Wilkins v. R. R.,* 174 N. C., 278, 93 S. E., 777; *Morton v. Water Co.,* 168 N. C., 582, 84 S. E., 1019; *Pate v. Steamboat Co.,* 148 N. C., 571, 62 S. E., 614.

However, as such statements, narrative of past occurrences, are competent only for purpose of contradiction or impeachment, it is error to

admit them as substantive evidence or to give them the force of such evidence in the charge. *Johnson v. Ins. Co., supra.*

The court at first instructed the jury in regard to the evidence, now under consideration, as follows:

"The plaintiff contends that you ought to find that Mr. McClure, superior over Mr. Hubbard, on Saturday night after the injury, went to Charlotte and went to Mr. Hubbard's father and mother and told them that he regarded it as his own fault that his son was injured, and that it happened because the pole was too heavy for them to raise, the plaintiff contends that you ought to find that that happened in attempting to raise a heavy pole of that character with insufficient help."

This was erroneous under the decision in *Johnson's case, supra.*

But immediately after the jury had retired to consider the case, it was recalled and given the following instruction:

"In referring to the evidence of Mr. Hubbard, Sr., of Mr. McClure telling him on Saturday after the injury that he regarded it his fault that it happened, because the pole was too heavy to raise, I told you at the time that the evidence was admitted merely for the purpose of contradicting Mr. McClure's testimony, and for no other purpose. It is also proper to say that when Mr. McClure went on the stand, he testified that the conversation did not occur. Mr. Hubbard's testimony was merely for the purpose of contradicting Mr. McClure. It was offered merely for the purpose of contradiction. The weight of it is entirely with you."

We are not now under the necessity of deciding whether this was sufficient to cure the error, without specifically withdrawing the previous instruction, as a new trial must be awarded on other grounds.

Of course, it is elementary that where there are conflicting instructions with respect to a material matter—one correct and the other not— a new trial must be granted, as the jurors are not supposed to know which one is correct, and we cannot say they did not follow the erroneous instruction. *Edwards v. R. R.,* 132 N. C., 99, 43 S. E., 585; *Tillett v. R. R.,* 115 N. C., 662, 20 S. E., 480; *S. v. Falkner,* 182 N. C., 793, 108 S. E., 756.

The following instruction on the issue of assumption of risk forms the basis of one of defendant's exceptive assignments of error:

"The contention is made by the defendant that the plaintiff assumed all risks of dangers naturally incident to the employment in which he was engaged. And the burden is upon the defendant to satisfy you that he assumed it himself—that the plaintiff assumed all risk of any dangers which were inherently incident to the kind of employment in which he was engaged."

The Federal rule is that except in cases where the violation of a statute enacted by Congress for the safety of employees has contributed to the injury, the employee assumes the risks normally incident to the occupation in which he voluntarily engages; other and extraordinary risks, and those due to the employer's negligence, he does not assume until made aware of them, or until they become so obvious and immediately dangerous that an ordinarily prudent man would observe and appreciate them; in either or both of which cases he does assume them if he continue in the employment, without objection or without obtaining from the employer an assurance that the matter will be remedied; but if he receive such an assurance (the dangers being both obvious and imminent), then, pending the performance of the promise, the employee, in ordinary cases, does not assume the special risk. Of course, if the dangers be so *imminent* that no ordinarily prudent man, under the circumstances, would rely upon such promise, then he would assume the risk, even pending the performance of such promise. *Cent. Vt. Ry. v. White,* 238 U. S., 507; *Seaboard v. Horton,* 233 U. S., 492; *Gila Valley. etc. Ry. v. Hall,* 232 U. S., 94; *Gaddy v. R. R.,* 175 N. C., 515, 95 S. E., 925.

"Some employments are necessarily fraught with danger to the workman—danger that must be and is confronted in the line of his duty. Such dangers as are normally and necessarily incident to the occupation are presumably taken into the account in fixing the rate of wages. And a workman of mature years is taken to assume risks of this sort, whether he is actually aware of them or not. But risks of another sort, not naturally incident to the occupation, may arise out of the failure of the employer to exercise due care with respect to providing a safe place of work and suitable and safe appliances for the work. These the employee is not treated as assuming until he becomes aware of the defect or disrepair and of the risk arising from it, unless defect and risk alike are so obvious that an ordinarily prudent person under the circumstances would have observed and appreciated them. These distinctions have been recognized and applied in numerous decisions of this Court. (Citing authorities.) When the employee does know of the defect, and appreciates the risk that is attributable to it, then if he continues in the employment, without objection, or without obtaining from the employer or his representative an assurance that the defect will be remedied, the employee assumes the risk, even though it arise out of the master's breach of duty. If, however, there be a promise of reparation, then during such time as may be reasonably required for its performance or until the particular time specified for its performance, the employee relying upon the promise does not assume the risk unless at

least the danger be so imminent that no ordinarily prudent man under the circumstances would rely upon such promise"—*Mr. Justice Pitney* in *Seaboard Air Line v. Horton*, 233 U. S., 492.

Speaking to the subject in the recent case of *Del. L. & W. R. Co. v. Koske*, 279 U. S., 7, *Mr. Justice Butler*, delivering the opinion of the Court, said: "And, except as provided in section 4 of the act, the employee assumes the ordinary risks of his employment; and when obvious, or fully known and appreciated, he assumes the extraordinary risks and those due to negligence of his employer and fellow employees."

The following concise statement of the rule is to be found in *Director General of Railroads v. Templin* (Third Circuit), 268 Fed., 483: "It is recognized that under the Federal Employers' Liability Act an employee assumes the risks normally and necessarily incident to his employment, and also the extraordinary risks, or risks caused by his master's negligence; yet he assumes the latter only when they are obvious or fully known by him and are such as would under the circumstances be seen and appreciated by an ordinarily prudent person."

In this jurisdiction, as well as in the Federal Courts, in cases where the plea of assumption of risk is available to the defendant, he must set it up or plead it, and he also has the burden of proof on the issue raised by this plea. *Kanawha & M. R. Co. v. Kerse*, 239 U. S., 581, 60 L. Ed., 448; *Cobia v. R. R., supra; Lloyd v. R. R.*, 166 N. C., 24, 81 S. E., 1003, affirmed, 239 U. S., 496; *Eplee v. R. R.*, 155 N. C., 293, 71 S. E., 325; *Dorsett v. Mfg. Co.*, 131 N. C., 254, 42 S. E., 612; *West v. Mining Corp.*, 198 N. C., 150, 150 S. E., 884.

But in cases where the defense of assumption of risk is open to the defendant, and is set up, it is inexact to say the defendant has the burden of proving that "the plaintiff assumed all risks of danger which were inherently incident to the kind of employment in which he was engaged." This, the law declares. An employee is conclusively presumed to have knowledge of the hazards normally incident to the occupation in which he voluntarily engages, and he assumes the risk of injuries arising therefrom. *C. R. I. & P. Ry. Co. v. Ward*, 252 U. S., 18; *Gila Valley, etc. R. Co. v. Hall*, 232 U. S., 94. The burden which the defendant must carry on the issue of assumption of risk is to show that the injury which the plaintiff sustained resulted from one of the ordinary risks of the occupation, or from some defect which was obvious and fully known to the plaintiff and appreciated by him, or so plainly observable that he must be presumed to have known it. *C. R. I. & P. Ry. Co. v. Ward, supra; Cent. Vt. Ry. v. White*, 238 U. S., 507; *Pyatt v. R. R.*, 199 N. C., 397, 154 S. E., 847; *Strunks v. Payne*, 184 N. C.,

582, 114 S. E., 840; *Looney v. N. & W. Ry. Co.*, 102 W. Va., 40, 135 S. E., 262, 48 A. L. R., 806.

In other words, except in cases where the violation of a statute enacted by Congress for the safety of employees has contributed to the injury, two classes of risks are assumed by the employee under the Federal rule: First, ordinary risks, or those normally incident to the occupation, of which the employee is conclusively presumed to have knowledge, thus requiring no proof of such knowledge on the issue of assumption of risk; Second, extraordinary risks, or those not normally incident to the occupation, which the defendant must show were either plainly observable, or known to the employee and the dangers appreciated by him. *Oglesby v. St. Louis-San Fran. Ry. Co.*, 1 S. W. (2d), 172.

Speaking to the subject in *National Steel Co. v. Hore*, 155 Fed., 62, *Lurton, Circuit Judge,* delivering the opinion of the Court, said:

"To defeat an action by the defense of assumption of risk, the employer must show not only that the servant knew of the negligence of which he complains, but that he knew and understood, or ought to have known and appreciated, the increased danger to which he voluntarily exposed himself. There is a distinction between knowledge of defects or knowledge of alleged negligent acts, and knowledge of the risks resulting from such defects or acts. In Cooley on Torts (3d ed.), 1048, the rule is stated in these words: 'It is essential to the assumption of risk, not only that the servant shall know the defect out of which the danger arises, but that he should appreciate the danger, or that the danger should be manifest to a man of ordinary intelligence and experience in the line of work in which the servant is engaged.'"

To like effect are the decisions in *Oglesby v. St. Louis-San Fran. Ry. Co., supra,* and *McIntyre v. St. Louis-San Fran. Ry. Co.*, 227 S. W., 1047.

Again, on the issue of damages, the jury was instructed as follows:

"If you come to the issue of damages, it would be your duty to take into consideration the evidence as to his injury, as to the loss of voice, as to what his prospects in life were, and what his life expectancy, the law gives forty and a fraction years. . . . The table of life expectancy says forty and a fraction. You are not bound by that however."

In cases arising under the Federal Employers Liability Act, the proper measure of damages and the method of ascertaining such damages are to be determined according to the general principles of law as administered in the Federal Courts. *C. & O. R. Co. v. Kelly,* 241 U. S., 485.

Speaking of the use of mortuary tables in personal injury and wrongful death cases, *Mr. Justice Gray,* delivering the opinion of the Court

in *Vicksburg & M. R. Co. v. Putnam,* 118 U. S., 545, said that, as an aid
to the jury in arriving at a fair estimate of what compensation should
be awarded the plaintiff, "standard life and annuity tables, showing
at any age the probable duration of life, and the present value of a life
annuity, are competent evidence. (Citing authorities.) But it has never
been held that the rules to be derived from such tables or computations
must be the absolute guides of the judgment and the conscience of the
jury. On the contrary, in the important and much-considered case of
*Phillips v. London & Southwestern Railway,* 4 Q. B. D., 406, 5 Q. B. D.,
78, the judges strongly approved the usual practice of instructing the
jury in general terms to award a fair and reasonable compensation,
taking into consideration what the plaintiff's income would probably
have been, how long it would have lasted, and all the contingencies to
which it was liable; and as strongly deprecated undertaking to bind
them by precise mathematical rules in deciding a question involving
so many contingencies incapable of exact estimate or proof."

Our own decisions are to the effect, and, in fact the statute provides,
that in cases where it is necessary to establish the expectancy of con-
tinued life of any person, the mortuary tables appended to C. S., 1790
"shall be received in all courts and by all persons having power to
determine litigation, as evidence with other evidence as to the health,
constitution and habits of such person." *Young v. Wood,* 196 N. C.,
435, 146 S. E., 70; *Odom v. Lumber Co.,* 173 N. C., 134, 91 S. E., 716;
*Sledge v. Lumber Co.,* 140 N. C., 459, 53 S. E., 295. The tables, it
will be observed, are not conclusive, but evidentiary only, and are to be
considered in connection "with other evidence as to the health, consti-
tution and habits of such person." *Russell v. Steamboat Co.,* 126 N. C.,
961, 36 S. E., 191. Compare *Canfield v. C. R. I. & P. R. Co.,* 142
Iowa, 658, 121 N. W., 186, and *Howell v. Lansing City Electric R. Co.,*
136 Mich., 432, 99 N. W., 406.

It was error, therefore, to say "the law gives forty and a fraction
years" as the expectancy of the continued life of plaintiff in the instant
case. This instruction was calculated appreciably to augment the
recovery, which it undoubtedly did.

The case is an important one. Plaintiff's injuries are great; the re-
covery is large; both sides are acutely interested in the result. A pains-
taking investigation of the record leaves us with the impression that the
above instructions, assigned as errors, weighed too heavily against the
defendant.

New trial.