TITUS T. GRANDY *v.* W. B. FEREBEE and EDWIN FEREBEE.

The declarations and acts of a third person are not evidence against a party, unless such third person be his agent; and the agency must be established before such acts and declarations are admissible.

A receipt for money given by an alleged agent for a specific purpose is not admissible to prove the fact of agency. The agency being established *prima facie* by other evidence, to the satisfaction of the Court, such receipt becomes then proper evidence.

The depreciation of Confederate money is not between private parties, constructive notice to the agent and the person paying the same, that the principal will not receive it. Otherwise, where the receiving agent is an officer of the Court, or one acting in a fiduciary capacity.

(*Monroe* v. *Stults*, 9 Ired. 281; *Williams* v. *Williamson*, 6 Ired. 281, cited and approved.)

CIVIL ACTION, tried before *Moore, J.*, at the August (Special) Term, 1872, of GRANVILLE Superior Court.

The plaintiff, at Spring Term, 1867, of the Superior Court of Law of Granville county, sued the defendants in DEBT upon their bond for $1,396.86, of date 1st January, 1858, and payable to plaintiff or bearer. At the return term of the writ, the defendants pleaded "payment and set off," and the cause was continued and regularly transferred and docketed in the new Superior Court.

Upon the trial in the Court below, to sustain the plea of "payment," (the execution and delivery of the bond being admitted,) the defendant, W. B. Ferebee, was examined and in substance testified that in July, 1863, he met with a brother of the plaintiff in Camden county, and asked him if they were taking Confederate money in Granville, the place where the plaintiff and this brother resided. Upon being informed that they were taking such money in that section, he mentioned that the plaintiff held his bond, (the one in suit); that he wished to pay it off, and asked the brother if he would take some money to the plaintiff for that purpose, that the plaintiff's brother consented to take the money, which in a few days afterwards was handed to

him, Confederate and Virginia Treasury notes, together with a note on plaintiff for about $60, amounting in all to about $1,698.   For this, the brother gave the following receipt, which was read to the jury, to-wit:

"July 24, 1863.   Received of W. B. Ferebee for T. T. Grandy, sixteen hundred and ninety-eight dollars, in payment of a note of said Ferebee, held by T. T. Grandy.

(Signed,)                                    W. S. GRANDY."

This defendant further stated that he owed a bond to one Cyrus W. Grandy, a refugee from Norfolk, Va., but then residing in Granville, and at the time above stated, or the next day, handed W. S. Grandy, the plaintiff's brother, the money (Confederate) to take that up also, taking a similar receipt to the foregoing, which receipt was likewise read to the jury.   That upon receiving this latter sum of money, the brother asked the defendant, if Cyrus W. Grandy should refuse to accept it, what must he do with it; and being informed by the brother, that he, himself, was funding his own surplus money in Confederate securities, this defendant told him to do the same with that handed him for Cyrus W. Grandy.   This evidence of W. B. Ferebee was objected to by the plaintiff, but was received by the Court, and the plaintiff excepted.

W. B. Ferebee, the defendant, further testified that the brother, W. S. Grandy, did not have with him at the time his bond due the plaintiff; that Camden county at that time was debatable ground, sometimes in the possession of the U. S. forces, at others, occupied by the Confederate soldiers, and that people were not generally in the habit of carrying about with them their bonds for fear of being robbed.   To this evidence the plaintiff again objected. Objection overruled, and exception by plaintiff.

Edwin Ferebee, the other defendant, being examined, stated that the plaintiff and his brother formerly lived in Camden county, the former removing to Granville in 1849,

and the brother in 1859, engaging as partners in the mercantile business in Oxford. That after their removal, they both continued to own plantations in Camden, and slaves; and that one or the other of them, would from time to time, come to Camden, and when W. S. Grandy came, he generally attended to the business of his brother, the plaintiff; that he sometimes hired out plaintiff's slaves and rented his land, and received the hires and rents. That the bond sued on was taken by the brother in renewal of a former one held by plaintiff against the defendants, which original bond was in the custody of the brother, and by him surrendered at the time of renewal. That W. S. Grandy on one occasion, executed to this defendant a bond for a small amount, and signed the same, "T. T. Grandy, by W. S. Grandy," and that the plaintiff afterwards paid it, which bond was produced and read to the jury. That the brother had also on another occasion paid the defendant an account for hats, blankets, &c., furnished to the slaves of the plaintiff. The plaintiff objected to the evidence of this witness, the defendant, Edwin Ferebee. Objection again overruled, and the plaintiff excepted.

In reply, the plaintiff, in substance, testified that he moved from the county of Camden to Oxford in 1849, and his brother in 1859; that each owned a plantation and negroes in Camden, and that after their removal one or the other of them would visit their former home once a year and attend to the renting, &c., of both; that if it was inconvenient for him, the plaintiff, to go, his brother would do so, and *vice versa*. That in July, 1863, his brother went to Camden on some business of his own, and upon his return brought to him a parcel of Confederate money, stating that W. B. Ferebee, the defendant, had requested him to bring it and pay off the bond which he, the plaintiff, held against him, (the one in suit,) and that he refused to receive the money; that his brother, W. S. Grandy, never collected or

received payment of any bond for him, in any instance, unless expressly authorized so to do, and furnished with the bond for that purpose; that his brother never had possession of the bond after its execution and never was authorized or requested in any manner to receive payment for it.

W. S. Grandy, the brother, was then examined and stated the same as to his removal from Camden, his partnership with his brother, their owning plantations and slaves, and the yearly visits of either one or the other, as before detailed. He further testified that in July, 1863, while he was on a visit to Camden, the defendant, W. B. Ferebee, after inquiring as to the currency of Confederate money in Granville, and being informed that it was the only money circulating, and that he, the witness, believed the people were generally taking it, requested the witness to take with him some fifteen or sixteen hundred dollars to plaintiff, which he consented to do, and that a few days after he also requested him to take some money to Cyrus W. Grandy. That in this last conversation the witness asked, " Suppose they should refuse to receive the money, what shall I do with it ?" That the witness was certain that the question was asked in relation to the money sent to plaintiff as well as that sent Cyrus W. Grandy; and upon being asked by the defendant, W. B. Ferebee, what he, the witness, was doing with his own Confederate money, and being told that he funded it in Confederate securities, Ferebee requested him to do the same with the money he entrusted to him. That when he returned to Oxford the plaintiff refused to receive the money sent, and the witness sent the same to Raleigh and invested it; that Cyrus W. Grandy received that sent by defendant to him. The witness further stated, that being in Camden in December of the same year, 1863, he saw W. B. Ferebee and informed him that plaintiff had refused to take the money sent to pay defendant's bond, and also told him what had been done with it; that he, defend-

ant, expressed some regret at the plaintiff's refusal, remarking that he had put himself to some trouble to get the money to send. He stated further that when he received the money from Ferebee in July, 1863, he did not have the bond with him nor did he know the amount of it; that the plaintiff never requested him to receive payment of the bond, and in receiving the money to bring to the plaintiff the witness did so under the impression that he · would thereby be accommodating both parties, but did not understand it was to be a payment unless the plaintiff should consent to receive the money as such payment. That on his visit to Camden in July the plaintiff did not request or empower him to attend to any business of his at all, and that it was at the special request of the plaintiff that he took the bond sued upon, having been given the original for that purpose.

The plaintiff asked his Honor to instruct the jury:

1st. That if they believed the facts were as testified to by the plaintiff and his brother, then the money given to the brother by the defendant, W. B. Ferebee, was no payment on the bond.

2d. That they were not at liberty to infer an authority on the part of the said W. S. Grandy, the brother, to collect or receive payment of the bond sued on from those acts which were done by him by express authority of the plaintiff.

3d. That if they could infer from the other acts proved to have been done by the brother as agent of the plaintiff such a general authority as, by implication, would empower him to collect or receive payment of the bond sued upon, yet he would not be authorized thereby to receive in payment of the same Confederate money at *par* at the time when he received said money from the defendant, and such receipt would not bind the plaintiff.

The Court refused to charge the jury as requested, and the plaintiff excepted. His Honor charged the jury that

if from the evidence they believed the brother of the plaintiff had attended to his business generally in Camden county, that would give him authority, by implication, to collect or receive payment of the bond sued on as far as the defendants were concerned, and that the money received by him from W. B. Ferebee in July, 1863, would be a good payment on the bond *pro tanto,* and would bind the plaintiff To these instructions the plaintiff again excepted.

There was a verdict allowing the set-off of $60 on the part of the defendants, and finding a payment of $1,638, and for the plaintiff for the balance of principal and interest of the bond declared on. Motion by plaintiff for a new trial; motion overruled. Judgment in accordance with the verdict, and appeal by plaintiff.

*Lanier,* for appellant.
*Hargrove* and *Batchelor, Edwards & Batchelor,* contra.

READE, J. It is common learning that the declarations and acts of a third person are not evidence against a party, unless such third person be his agent. And it is equally well settled that the agency must be established otherwise than by such declarations and acts, before they are admissible. And it is also settled that just as the Court in all other cases must judge of the competency or admissibility of evidence, so in this case the Court must be satisfied that *prima facie* the agency is proved before the declarations and acts can go to the jury. *Monroe* v. *Stults,* 9 Ired. 49; *Williams* v. *Williamson,* 6 Ired. 281. It follows, that to receive the declarations and acts along with other evidence tending to prove the agency, and submit the whole to the jury, from which to find the agency, without explanation that the declarations and acts themselves are not to be considered for that purpose, is erroneous. In this case, the receipt which the alleged agent gave for the money was a part of the evi-

dence left to the jury, not merely to show that he received the money, (for which purpose it would be competent, the agency being otherwise proved,) but to prove the agency itself, for which purpose it was clearly incompetent.

For this error there must be a *venire de novo.* It is not necessary that we should notice the other points made, as they will probably not arise on the next trial, except the point made by plaintiff, that even supposing the agency proved, still the great depreciation of Confederate money at that time was constructive notice to the agent and the defendant that it would not be received. We have so held, where the receiving agent was an officer, such as Clerk, Sheriff and the like, or was a guardian, administrator and the like ; but the inclination of our opinion is against the plaintiff upon this point, the agency being a personal one. It would operate as a payment of the debt *pro tanto*, if it were so received, and would leave the plaintiff to his remedy against his agent.

There is error.

PER CURIAM.                              *Venire de novo.*