SUMMERROW v. BARUCH.

(Filed May 7, 1901.)

1. AGENCY—*Declarations—Admissions—Res Gestae—Principal and Agent.*

> The declarations and admissions of an agent are not competent to prove the agency unless a part of the *res gestae.*

2. EVIDENCE — *Res Gestae — Declarations and Admissions of Agent—Agency.*

> The declarations in this case are inadmissible to prove agency as part of the *res gestae.*

MONTGOMERY, J., dissenting.

ACTION by B. J. Summerrow and Lizzie L. Summerrow against Herman and D. H. Baruch, heard by Judge *W. S. O'B. Robinson* and a jury, at January Term, 1901, of MECKLENBURG County Superior Court. From judgment for plaintiffs, the defendants appealed.

*Jones & Tillett,* and *Jas. A. Bell,* for the plaintiffs.
*Burwell, Walker & Cansler,* and *Osborne, Maxwell & Keerans,* for the defendants.

FURCHES, C. J. This is an action for damages for assault and slander, growing out of the same transaction. The defendant D. H. Baruch is the wife of Herman Baruch, and the owner of a store in the city of Charlotte, and the defendant Herman is her general manager of the store. In December, 1899, the plaintiff, Mrs. Summerrow, in company with a lady friend (Mrs. Barnwell) went into this store with the view of making some purchases. The store was very much crowded, but the *feme* plaintiff and her friend made their way

through the crowd to one of the counters and commenced to examine a piece of lace, while her friend turned to another counter and was examining some dress goods. At this time and while the *feme* plaintiff had the lace in her hands, her friend called her attention to the dress goods she was examining, and the *feme* plaintiff, with the lace in her hands, turned around to answer the call of her friend, when one Friedham put his hand on her shoulder and asked her what she had there. She replied, a piece of embroidery, and wanted to know the price, when Friedham said: "I know you want to know the price; you stand here; you need watching, madam. I will call Mr. Baruch." He called Baruch and then turned around and took the embroidery and said: "You would have made a pretty good haul if you had hauled off this;" to which plaintiff replied: "I give you to understand I am not trying to haul anything." He then said: "What have you got there in that bundle?" to which she replied: "It is none of your goods," and threw the bundle on the counter, and it was examined and found to be a pair of shoes she was taking to the shop to be repaired. Friedham had called Mr. Baruch, who came up, and plaintiff said: "Mr. Baruch, this man has accused me of trying to steal goods," and Mr. Baruch said: "That is all right, that is all right; I know this lady," and Friedham said: "Mr. Baruch, you had better get someone else to watch this counter; they are tearing up goods and I don't know what has become of them."

Mrs. Summerrow also testified that Mr. Baruch told her to look at any goods and bring them to him and he would price them; that it was in the forenoon when she was insulted by Friedham, and she went back to the store that evening when she saw Friedham waiting on two ladies, measuring some goods.

There was much evidence introduced during the trial by plaintiffs, but none that tended to establish the agency of Friedham, except that stated above.

The agency of Friedham was denied by defendants, and defendants and Friedham testified that he was not employed by them; that he had nothing to do in or with the store, and was in no way the agent of the defendants, and they were not responsible for any wrongful act of his.

Not denying the wrongful acts and conduct of Friedham, the defence is put upon two grounds:   That there is no evidence that Friedham was the employee or agent of the defendant D. H. Baruch; and, if there was any evidence tending to show that he was the employee of D. H. Baruch, he was not authorized by such employment to commit the assault and slander the plaintiff, and she is not liable therefor.   These are interesting questions.   But if it is found that defendants' contention as to the first ground is true, it will not be necessary to consider the second.

There is no evidence showing or tending to show that Friedham was the employee or agent of D. H. Baruch, except what Friedham said at the time of the occurrence of the transactions complained of, and the implied admissions of Herman Baruch when Friedham said to him:   "Mr. Baruch, you had better get someone else to watch this counter; they are tearing up goods and I don't know what has become of them."

The general rule is that the declarations and admissions of an agent are not competent to prove the agency—they do not of themselves establish agency.   Mecham on Agency, secs. 714, 715, 716, 717; Story on Agency, secs. 134-137; *Willis v. Railroad,* 120 N. C., 512, where almost this very case is put by way of illustration; *Taylor v. Hunt,* 118 N. C., 168; *Gilbert v. James,* 86 N. C., 244; *Grandy v. Ferebee,* 68 N. C., 356.

The fact that it was admitted that Herman Baruch was the general manager of the store of D. H. Baruch makes no difference.   He is still but an agent and his declarations or ad-

missions do not bind his principal. They are classed as hearsay, and are not under oath. *Williams v. Telephone Co.,* 116 N. C., 558; *Rumbough v. Improvement Co.,* 112 N. C., 751; *Southerland v. Railroad,* 106 N. C., 100.

This seems to be admitted to be the general rule. But plaintiffs sought to take it out of the general rule, and bring it under the exception to the general rule by claiming that it was a part of the *res gestae.* It is admitted there is such an exception, that is, where the words spoken are a part of the *res gestae,* they are admissible evidence. The question then is, were they a part of the *res gestae? Res gestae* is generally defined to be what is said or done contemporaneous with the fact sought to be established, or, at least, so nearly contemporaneous in point of time as to constitute a part of the fact to be proved and to form a part of it, or to explain it.

This, we understand to be the rule laid down by the best authorities, and is the one that seems to have been adopted in this State, and is the one we adopt. Even with this plainly defined rule, it is sometimes difficult to determine whether the words spoken, or the admissions made, are a part of the *res gastae* or not. But when we consider what these declarations were intended to prove, we meet with no such trouble in this case.

The fact desired to be proved by these declarations of Friedham, and the implied admissions of Herman Baruch, is that Friedham had been employed by the defendant D. H. Baruch before, and was employed by her at the time he committed the assault and insulted the *feme* plaintiff. It can not be contended that the acts and words of Friedham proved his agency. Indeed, we do not think that was insisted on by the learned counsel for the plaintiff; nor can what Herman Baruch "said" by saying nothing when Friedham said to him: "You had better get someone else to watch this counter," proved that Friedham had been employed by defendants. It

can not, as we think, be contended that this, if taken to be an admission, was any part of the *res gestae* of Friedham's employment, if he ever was employed, and that is what it was offered to prove. And if it was not a part of the *res gestae,* then it was incompetent, for Herman himself was only an employee and agent of the defendant D. H. Baruch, and it falls directly within the case of *Williams v. Telephone Co., supra,* and the other case there cited.

To this general rule, and the exception thereto of being a part of the *res gestae,* there seems to be some authority for another exception, that is, where there is a *special* agent, who is authorized to receive payment of the debt—that his admission that he had received the money or payment is competent evidence. *Bank v. Wilson,* 12 N. C., 484; Story on Agency, sec. 137, note 3. But if these be authority for such an exception, this case does not fall within it. And such exception seems not to have been recognized in the many cases in our Reports, since that of *Bank v. Wilson,* decided in 1828.

After a careful examination of this case and the authorities, we are of the opinion that the defendants' motion to dismiss as of nonsuit should have been allowed.

Error.

DOUGLAS, J., concurring. While concurring in the result, under the circumstances of this case I am not prepared to say that an agent having entire charge of the principal's business, or of some independent branch thereof, can never bind his principal by admissions made in the distinct line of his employment. Where a principal (for instance a wife, as in the present case), simply owns a business and leaves its entire management and control to a general agent, over whom she exercises no supervision whatever, it seems to me that cases might arise where the inherent nature of the transaction would make his admissions binding upon her. How far a

merchant having an open store into which he invites the public, is bound to protect them from insult or assault by his employees, I am not now prepared to answer. This question can not arise without legal admission or proof of the employment. A merchant can not be held to the strict obligations of an inn-keeper or a common carrier; but it seems to me that there must be some measure of duty resting upon him, arising either from public policy or in the nature of implied contract, to exercise reasonable care in protecting his customers from the tortious acts of his employees, especially when such acts are done under color of their employment.

MONTGOMERY, J., dissents.