PAUL H. PEARCE v. SOUTHERN BELL TELEPHONE AND TELEGRAPH
COMPANY AND JOHN C. WARD, TRADING AND DOING BUSINESS AS
JOHN'S PHONE BOOTH SERVICE COMPANY

No. 49

(Filed 8 January 1980)

**1. Evidence § 36— statements by agent—admissibility against principal**

The statement of an agent to a third party will be admitted into evidence
as the admission of the principal only when (1) the statement is spoken within
the scope of the agent's authority to speak for his principal, or (2) the state-
ment relates to an act presently being done by him within the scope of his
agency or employment.

**2. Evidence § 36.1— statements by defendant's employee—inadmissibility
against defendant**

In an action to recover for injuries sustained when plaintiff tripped and
fell over anchor brackets left in a sidewalk after removal of a telephone booth,
statements concerning defendant telephone company's liability made to plain-
tiff by defendant's service foreman for telephone booth maintenance when he
came to supervise removal of the brackets an hour and a half after the acci-
dent were not admissible against defendant where there was no showing that
the service foreman was defendant's agent for handling negligence claims, and
the statements did not relate to an act presently being done by the foreman
within the scope of his employment but constituted a hearsay narrative of a
past occurrence.

Justice COPELAND dissenting.

Justices EXUM and CARLTON join in the dissenting opinion.

APPEAL by defendant Southern Bell from decision of the
Court of Appeals, 41 N.C. App. 62, 254 S.E. 2d 243 (1979), which
found no error in the trial before *Smith (David I.), S.J.,* at the 30
January 1978 Civil Session of NEW HANOVER Superior Court.

On 27 May 1975, plaintiff brought this action to recover
damages for personal injury suffered on 4 July 1974 when he
struck his right foot on a bracket left embedded in the cement ad-
jacent to the sidewalk in Carolina Beach. The bracket had been
placed there by defendant Southern Bell as an anchor for one of
its telephone booths and had been left there by defendant John C.
Ward when, pursuant to instructions from Southern Bell, Ward
removed the telephone booth some six months before the acci-
dent.

Plaintiff alleged that his injuries were proximately caused by the negligence of either or both defendants. In its answer, Southern Bell denied negligence on its part and asserted that John C. Ward was acting as an independent contractor when he removed the telephone booth and left the brackets. In his answer, defendant Ward denied he was an employee of Southern Bell, admitted removing the telephone booth at the request of Southern Bell, and denied negligence.

Plaintiff's evidence tends to show that a telephone booth stood at the corner of the Battery Restaurant, adjacent to a sidewalk in Carolina Beach. In April 1973, the operator of the restaurant asked Southern Bell to remove the booth. "I told them that it might be for just a temporary period of time, maybe a week or so, and that it might be put back after some remodeling or reconstruction of the outside of the restaurant." The phone booth was removed but the brackets which formerly anchored the booth were left in the cement. Thereafter, "sometime in 1973," the restaurant operator "contacted the telephone company and told it to remove the brackets." The brackets were not removed until 4 July 1974 *after plaintiff's accident.*

Plaintiff's evidence further tends to show that on 4 July 1974, while walking to a restaurant with his wife for lunch, he struck his right foot on a metal bracket adjacent to the sidewalk and fell, thus lacerating his right toe and twisting his left knee. The bracket was the same color as the sidewalk, and plaintiff had trouble seeing it even after tripping over it. Plaintiff called Southern Bell, and one Robert Rochelle, service foreman for telephone booth maintenance, promptly came to the location of the accident and in a conversation with plaintiff concerning the incident confessed negligence "on their behalf" and informed plaintiff someone from Southern Bell would contact him and furnish the name of a physician. Mr. Rochelle said: "We will take care of everything for you."

Plaintiff was later treated by Drs. Weis and Hundley for his injuries, incurred medical bills in the sum of $344.19, and plaintiff offered medical evidence tending to show that he had sustained a 10 percent permanent physical impairment to his left knee, secondary to a torn cartilage.

Defendant's evidence tends to show that John C. Ward, pursuant to contract, cleaned and maintained telephone booths for Southern Bell. One morning prior to 4 July 1974, Ward "got a call from Mr. Robert W. Rochelle, service foreman for booth maintenance for Southern Bell, to go and remove a phone booth at the Battery Restaurant; I was to remove this booth on a temporary basis. He said it might be for a day or two, as whoever was working on the building wanted to do some work behind where the booth was. Mr. Rochelle was the only one who would call me usually . . . . He instructed me to remove the booth, take it to the back of the building, and turn it face in so that no one would get inside and mess with the phone. He said he would let me know something in the next day or two as to when to put it back. I went and disconnected the booth and left the brackets standing because the work was being done in the area on scaffolding and such, and the booth was to go right back in the next day or so." Mr. Ward did not hear anything further on this matter until 4 July 1974. On that day Mr. Rochelle called Mr. Ward and told him to "go down there and remove these brackets, that somebody had stumped their toe." Mr. Ward went to the restaurant and quickly removed the brackets, and Mr. Rochelle arrived at the scene of the accident a few minutes after the removal.

At the close of all the evidence, the trial court allowed John Ward's motion for a directed verdict. Plaintiff appealed, and the Court of Appeals reversed and remanded for a new trial as to defendant Ward. 41 N.C. App. at 67. Defendant Ward has not appealed from this decision. Consequently, this aspect of the case is not before us.

At the close of all the evidence, the trial court denied Southern Bell's motion for a directed verdict. The jury found negligence on the part of Southern Bell, no contributory negligence on the part of plaintiff, and awarded plaintiff $15,000. Southern Bell appealed to the Court of Appeals and that court found no error with Vaughn, J., dissenting. Defendant thereupon appealed to the Supreme Court as of right pursuant to G.S. 7A-30(2).

*Brown & Culbreth by Stephen E. Culbreth, attorney for plaintiff appellee.*

*Poisson, Barnhill, Butler & Britt, by L. J. Poisson, Jr., and John C. Collins; R. Frost Branon, Jr., General Attorney for Southern Bell; of Counsel, Drury B. Thompson, Vice President and General Counsel for Southern Bell, attorneys for defendant appellant.*

HUSKINS, Justice.

The dispositive question on this appeal is whether statements allegedly made to plaintiff by defendant's agent R. W. Rochelle, were properly admissible into evidence as the admissions of Southern Bell.

[1] In North Carolina there are two grounds upon which the statement of an agent to a third party will be admitted into evidence as the admission of the principal. *See generally,* 2 Stansbury, North Carolina Evidence, § 169 (Brandis rev. 1973). First, such statement is admissible if it is spoken within the scope of an agent's authority to speak for his principal. *Norburn v. Mackie,* 262 N.C. 16, 136 S.E. 2d 279 (1964); *Carlton v. Bernhardt-Seagle Co.,* 210 N.C. 655, 188 S.E. 77 (1936); *Russell v. Oil Co.,* 206 N.C. 341, 174 S.E. 101 (1934). If there is competent evidence that an agent is *authorized to speak* on behalf of his employer, then statements he makes to third parties within the scope of his authority and in the course of his agency are admissible in evidence as the admissions of the principal. 2 Stansbury, supra, § 169 at 12-15. Any intimations to the contrary in *Pangle v. Appalachian Hall,* 190 N.C. 833, 131 S.E. 42 (1925); *McEntyre v. Cotton Mills,* 132 N.C. 598, 44 S.E. 109 (1903); *Summerrow v. Baruch,* 128 N.C. 202, 38 S.E. 861 (1901), and *Williams v. Telephone Co.,* 116 N.C. 558, 21 S.E. 298 (1895), are expressly rejected.

Second, if there is no competent evidence that an agent has authority to speak for his principal, then his statement to third parties will be received as an admission of his principal only if the statement relates to an act *"presently being done* by him within the scope of his agency or employment." *Hubbard v. R.R.,* 203 N.C. 675, 166 S.E. 802 (1932) (emphasis added). *Accord,* 2 Stansbury, supra, § 169, and cases cited therein. If the statement made is "merely narrative of a past occurrence," it is not part of

the res gestae but only hearsay and is not competent as against the principal. *Hubbard v. R.R.*, supra. "Authority to do an act on the principal's behalf does not ordinarily carry with it an implied authority to talk about it afterwards." 2 Stansbury, supra, § 169 at 16.

[2] Application of the above principles to the facts in this case leads us to conclude that the statements allegedly made to plaintiff by defendant's agent, R. W. Rochelle, were erroneously admitted into evidence.

Plaintiff testified that he called Southern Bell immediately after his injury. He spoke to an operator and said: " 'Operator, I guess this is an emergency. I have been injured by what used to be a phone booth on your property. To whom should I speak?' And I spoke with a lady . . . . She said she would have someone down there immediately and that she was sorry about the accident." Approximately an hour and a half later a Mr. Rochelle, from Southern Bell, came into plaintiff's shop, which was near the scene of the accident. Plaintiff testified that Mr. Rochelle told him the following:

"I am really sorry about the accident. That this is negligence on our behalf. That someone from the phone company will contact you today and let you know what doctor to go to. I am not versed in the medical aspect of this. I am not sure exactly who our physicians are, but someone will contact you today and tell you exactly what physician to go to there will be no trouble about it. That we will take care of everything for you."

In order for this statement to be admissible as an admission of Southern Bell, there must be evidence that Mr. Rochelle had the authority to make such statements on behalf of Southern Bell or that such statements related to an act presently being done by Rochelle within the scope of his employment.

There is no evidence in the record establishing Rochelle's authority to speak on behalf of Southern Bell with respect to the handling of negligence claims. The record shows only that Rochelle was Southern Bell's service foreman for telephone booth maintenance. Apparently, he supervised the installation, cleaning and removal of telephone booths. Upon being alerted that the an-

chor brackets of a previously removed telephone booth had injured a pedestrian, he came to supervise the removal of the brackets. The mere fact that Mr. Rochelle may have taken it upon himself to make certain statements concerning Southern Bell's liability is not probative of whether he had authority to make them. "The existence of the agency cannot be proved by the agent's extrajudicial statements. It must be established *aliunde,* by the agent's testimony or otherwise, before his admission will be received against the principal." 2 Stansbury, supra, § 169 at 19, and cases there cited. *See, e.g., Parrish v. Manufacturing Co.,* 211 N.C. 7, 188 S.E. 817 (1936). In summary, the record on appeal is silent as to whether Mr. Rochelle was Southern Bell's agent for the purpose of handling negligence claims. Absent such evidence, his extrajudicial statements may not be received into evidence as the admissions of his principal.

Nor does the record indicate that Mr. Rochelle's alleged statements to plaintiff related to an act *"presently being done by him* within the scope of his agency or employment." *Hubbard v. R.R.,* supra (emphasis added). Rather, his statements related to an accident that had occurred an hour and a half earlier. As such, they merely constitute a hearsay "narrative of a past occurrence," which is not competent as against Southern Bell.

The erroneous admission of Rochelle's extrajudicial statements to plaintiff constitutes prejudicial error. Other assignments are not discussed since they are not likely to recur upon retrial.

For the reasons stated the decision of the Court of Appeals as it relates to Southern Bell is reversed. The case is remanded to the Court of Appeals for further remand to New Hanover Superior Court for retrial as to both defendants.

Reversed and remanded.

Justice COPELAND dissenting.

I respectfully dissent from the holdings of the majority that there is no evidence in the record that Rochelle was authorized to speak to plaintiff and that when an agent is not authorized to speak, his statements will bind his principal only when the agent

speaks about a matter that he is authorized to perform *while he is presently performing it.*

At one point, the majority states that the statements should not have been admitted because Rochelle was not authorized to make the statements that he made to the plaintiff concerning Southern Bell's negligence in failing to remove the metal brackets. It has never been required that the agent be authorized to make the *exact* statements that he in fact made. Companies rarely, if ever, will authorize an agent to admit negligence or the facts that constitute negligence. The rule states simply that to bind the principal, the agent must be authorized to speak; then, whatever he says during that speech will bind his principal.

The majority concludes that there is no evidence in the record that Rochelle was authorized to speak to plaintiff or that he was authorized to handle negligence claims.

The evidence in the record reveals that on 4 July 1974, Robert W. Rochelle was a service foreman for telephone booth maintenance for Southern Bell. He drove a "small compact Pinto with 'Southern Bell' all over it." Plaintiff testified that after the accident he,

> "called Southern Bell Telephone instantly. I just said, 'Operator, I guess this is an emergency. I have been injured by what used to be a phone booth on your property. To whom should I speak?' And I spoke with a lady; I am not really sure exactly what her name was. She said she would have someone down there immediately and that she was sorry about the accident.
>
> I saw someone from Southern Bell that day; I believe the gentleman's name was Mr. Rochelle. It wasn't any longer than maybe an hour and a half from the time that I was injured until he was down there. He came into my shop.
>
>      . . .
>
>      . . . [W]hile he was in the shop talking to me, they were taking the brackets off the sidewalk. It was two gentlemen with a sledge hammer and a chisel . . . . Mr. Rochelle came into the shop and said, . . . 'I am really sorry about the accident. That this is negligence on our behalf. That someone

from the phone company will contact you today and let you know what doctor to go to. I am not versed in the medical aspect of this. I am not sure exactly who our physicians are, but someone will contact you today and tell you exactly what physician to go to there will be no trouble about it. That we will take care of everything for you.' "

After the accident, there not only were metal brackets to be removed, there was an injured pedestrian who wanted to speak with a Southern Bell representative. *Rochelle was the man sent by Southern Bell to deal with both aspects of this emergency situation.* Therefore, I believe that this evidence (apart from declarations of the agent since such statements are not proof of any authorization to speak) gives rise to the inferences that Rochelle was authorized by Southern Bell to go to the accident scene, to have the metal brackets removed and to speak with the injured person about Southern Bell's procedure when an injury has occurred.

In addition, the record cries out with evidence that while he may not have been authorized to handle negligence claims in general, Rochelle was the man designated by Southern Bell to handle *this* negligence claim. For example, on 11 March 1976, Rochelle verified on behalf of Southern Bell the Answers to Interrogatories filed in this matter by defendant Southern Bell. Also, on 21 April 1976, defendant Southern Bell filed an Amended Answer in this case that was verified on defendant's behalf by Rochelle. From all of the above evidence, I believe that Rochelle was much more than the mere repairman that the majority characterizes him to have been. The conclusion appears inevitable to me that Rochelle was authorized to speak to the plaintiff on the afternoon of the accident and was authorized to handle this negligence claim when plaintiff initiated it.

The majority reiterates and follows our present rule that even when an agent is not authorized to speak, his statements are nevertheless admissible against his principal when he speaks about the act he is performing *while he is performing it.* The majority states that such testimony is hearsay but it is admissible because it comes within the *res gestae* exception.

In general terms, hearsay testimony is unreliable and inadmissible because it is not given under oath at trial where it can

be subjected to cross-examination. However, when there are other indicia of reliability, courts allow the testimony to be admitted as exceptions to the hearsay rule. The spontaneous nature of an agent's statements, made while he is performing the act, are made without time for reflection and fabrication. That is the indication of reliability causing the statements to be admitted under the *res gestae* exception. However, if the agent has finished performing his act, *then his agency is at an end,* and any declarations made by him about the past occurrence are inadmissible as hearsay and do not fit within any exception.

In my view, this approach is erroneous for two reasons. Our rule in this area should turn upon application of the substantive law of agency rather than upon application of the principles of the rule against hearsay and its *res gestae* exception. Also, the indication of reliability supplied by the *res gestae* exception is unnecessarily restrictive. There are sufficient indicia of reliability inherent in the agency relationship itself to warrant admitting even the *post rem* statements of the agent against his principal.

First,

"[T]o impose liability upon the master, it is only necessary to recognize that the agent's *post rem* statements were actually made within the scope of his authority. Where such authority exists, the agent's statement is no less hearsay, *but the hearsay exclusion rule is inapplicable because, under the substantive law of agency, the agent's statement is considered 'as if' made by the* principal himself . . . ." *Branch v. Dempsey,* 265 N.C. 733, 764, 145 S.E. 2d 395, 417 (Sharp, J. (Later C.J.), dissenting.) (Emphasis added.) *See also,* Note, 44 N.C. L. Rev. 1146 (1966).

After this determination is made applying the substantive law of agency, the statements can be received into evidence as vicarious admissions of the principal. "The question is one of substantive law, the law of agency. It *is not a question of res gestae* as is often supposed." *Whitaker v. Keogh,* 144 Neb. 790, 795-96, 14 N.W. 2d 596, 600 (1944). (Emphasis in original.) "To argue from one case to another [under the *res gestae* exception] on this question of 'time to devise or contrive' is to trifle with principle, and to cumber the records with unnecesary and unprofitable quib-

bles." *Lucchesi v. Reynolds*, 125 Wash. 352, 355, 216 Pac. 12, 13 (1923).

In my view, the agency relationship does not terminate as suddenly and as magically as the majority concludes that it does. The scope of the agent's authority should be viewed as covering not only the agent's acts but also his *post rem* statements about those acts. Justice (later Chief Justice) Sharp addressed this issue in her dissenting opinion in *Branch v. Dempsey*, and there observed:

> "As Wigmore points out, it is in the field tortious liability that the scope of an agent's authority is most difficult to determine.
>
> > 'For example, if A is an agent to drive a locomotive, and a collision ensues, why may not his admissions, after the collision, acknowledging his carelessness, be received against the employer? Are his statements under such circumstances not made in performance of work he was set to do?' Wigmore, *op. cit. supra* § 1078.

In discussing this problem, he cites *Northern Central Coal Co. v. Hughes*, 224 Fed. 57 (8th Cir.) and *Rankin v. Brockton Public Market*, 257 Mass. 6, 153 N.E. 97, both personal injury cases in which the *post rem* statements of the employee were held incompetent as against the employer. He argues that it is absurd to hold that an employee has the power to make the employer heavily liable, yet that his extrajudicial confession of facts constituting negligence may not be heard in court. '[T]he pedantic unpracticalness of this rule as now universally administered makes a laughingstock of court methods . . . . Such quibbles bring the law justly into contempt with laymen.' *Ibid*." *Branch v. Dempsey, supra* at 757-58, 145 S.E. 2d at 412 (Sharp, J. dissenting).

The agent is the one who was hired to do the job. He is the one who either did or did not perform his assigned task and he is the one with the most immediate knowledge of the facts and circumstances surrounding the performance or non-performance of that task. He is still acting within the scope of his authority when he makes statements about an act he was authorized to perform and has in fact performed or failed to perform. Therefore, the

statements should be received in evidence as vicarious admissions of the principal. In an analogous situation, where the agent was authorized to drive a truck, it was stated,

> "To say, in these circumstances, that the owner of a motor truck may constitute a person his agent for the purpose of the operation of such truck over public streets and highways, and to say at the same time that such operator is no longer the agent of such owner when an accident occurs, for the purpose of truthfully relating the facts concerning the occurrence to an investigating police officer on the scene shortly thereafter, seems to me to erect an untenable fiction, neither contemplated by the parties nor sanctioned by public policy. It is almost like saying that a statement against interest in the instant case could only have been made had the truck been operated by an officer or the board of directors of the Corporation owning the truck; and trucks are not operated that way. To exclude the statement of the driver of the truck as to the speed of the truck at the time of the collision, which was not only clearly excessive in the circumstances, but even greater than the speed limit permitted on the highway between intersections, would be to deny an agency which I believe inherently exists regardless of whether the statement is made at the moment of the impact, or some minutes later to an investigating officer, or other authorized person." *Martin v. Savage Truck Line*, 121 F. Supp. 417, 419 (D.C. 1954).

Second, the remaining argument for excluding the statements is that they are unreliable. The *post rem* statements of the agent admitting facts that constitute negligence subject the agent to the possibility of personal civil liability and may jeopardize his present employment as well as impair his future employment opportunities. *K.L.M. Royal Dutch Airlines Holland v. Tuller*, 292 F. 2d 775 (D.C. Cir.), *cert. denied*, 368 U.S. 921 (1961). These considerations are more than sufficient indicia of reliability to warrant admitting the statements. This aspect of the issue was also addressed by Justice Sharp in her dissenting opinion in *Dempsey* with respect to the operation of a motor vehicle by an agent.

"Perhaps it will be suggested that employees, knowing that plaintiffs prefer to seek the deeper pocket of the employer, may be inclined to confess fault where none exists, or where it is doubtful, in order to help an injured plaintiff or to have the employer share the responsibility. This argument contravenes human nature. No motorist likes to admit that his negligence caused an accident. Ordinarily a person will absolve himself from blame in any situation where it is possible for him to do so. The employee who has been involved in a collision resulting in property damage, personal injury, or death, knows that, in addition to the possible loss of his job, he may face . . . civil . . . liability . . . . That agents customarily misrepresent the facts by deliberately making false statements which place the blame for the accident upon themselves, for the purpose of imposing liability upon their principals . . . strains credulity and presupposes the untrustworthiness of agents and servants as a class." *Branch v. Dempsey, supra* at 764-65, 145 S.E. 2d at 417 (Sharp, J. dissenting).

This view that the agent is still acting within the scope of his authority when he makes the *post rem* statements has been adopted in the federal courts. Fed. Rule Evid. 801(d)(2)(D) provides that the agent's statements are admissible and are not hearsay when they are made by an agent or servant "concerning a matter within the scope of his agency or employment, made during the existence of the relationship." By deleting the requirement in our rule that the statements must be made "while the agent is presently performing the authorized act," our rule would be coextensive with the federal rule. For all the reasons discussed above, I believe that this is the course we should follow.

Thus, my vote is to hold that there was no error by the trial judge in admitting Rochelle's statements against Southern Bell because Rochelle was authorized to speak to plaintiff and the statements were made concerning a matter within the scope of Rochelle's employment.

Justices EXUM and CARLTON join in this dissent.