PAULETTE CORDA, ADMINISTRATRIX OF THE ESTATE OF MICHAEL CORDA, DECEASED v. BROOK VALLEY ENTERPRISES, INC. AND TROY E. ROBERSON

No. 823SC823

(Filed 6 September 1983)

1. Death § 3.6— pool drowning—summary judgment improperly entered in wrongful death action

In a wrongful death action, the trial judge erred in entering summary judgment for both defendants where the evidence was sufficient for a jury to find the lifeguard did not observe the pool for swimmers in distress as a reasonably prudent man serving as a lifeguard would have done when he left his lifeguard station and went to fold up chairs and umbrellas, and where it was a jury question as to whether the corporate defendant acted as a reasonable man operating a swimming pool would have acted in not having two lifeguards on duty when the lifeguard was responsible for maintaining the area around the pool.

2. Evidence § 36— wrongful death action—lifeguard's statements concerning corporate defendant—properly excluded

In a wrongful death action arising from a possible pool drowning, the trial court properly excluded statements made by the lifeguard concerning safety provisions which were not provided by the corporate defendant since the testimony was not made by an agent of the corporation as it concerned an act then being done in his representative capacity but rather was a narrative of a past occurrence.

3. Evidence § 33.2— answers to interrogatories based on information and beliefs—properly excluded

The trial court properly excluded answers to interrogatories which were based on information and belief rather than on personal knowledge.

4. Evidence § 50.3— pathologist's opinion as to cause of death—improperly excluded

In a wrongful death action stemming from a possible pool drowning, the trial court erred in excluding a pathologist's answer as to whether or not the victim could have been successfully resuscitated had a lifeguard gotten to him within thirty seconds of the beginning of the inhalation of water since the witness was better qualified than the jury to form an opinion as to the cause of death and what might have prevented it.

5. Evidence § 18— wrongful death action—results of experiment conducted by lifeguard properly admitted

In a wrongful death action stemming from a possible pool drowning, the trial court properly admitted into evidence testimony by a lifeguard that using a stopwatch he had repeated from six to eight times his actions at the time of the alleged drowning.

**6. Evidence § 29.3— emergency room reports—improperly excluded**

In a wrongful death action, it was error for the trial court to exclude an emergency room report in regard to the victim where the parties stipulated to its authenticity.

**7. Evidence § 44— wrongful death action—testimony concerning observation of victim prior to death—properly admitted**

In a wrongful death action in which the victim allegedly drowned in a swimming pool, the trial court properly allowed a lifeguard to testify as to his observation of the victim at times prior to the date of the drowning when the victim was in the swimming pool since the testimony was not excluded under G.S. 8-51 as testimony concerning a personal transaction with the deceased.

APPEAL by plaintiff from *Peel, Judge*. Judgment entered 28 January 1982 in Superior Court, PITT County. Heard in the Court of Appeals 19 May 1983.

This is an action for wrongful death. The plaintiff's evidence showed that on 1 August 1980 the plaintiff's intestate Michael Corda, a member of the Brook Valley Country Club, was using the swimming pool at the country club which was owned by the defendant Brook Valley Enterprises, Inc. The defendant Troy E. Roberson was on duty as a lifeguard at the time. At approximately 5:30 p.m., Mr. Roberson left his lifeguard station and went to move some chairs and to take down several umbrellas in anticipation of an approaching storm. Before going to move the chairs and umbrellas, Mr. Roberson saw Michael Corda standing at the side of the pool in approximately four feet of water. After Mr. Roberson had moved the chairs and umbrellas he started to "rescue a ring buoy." As he reached the ring buoy he saw a bluish-gray object under the water and heard someone say "This gentleman has been under water longer than I think he should have." Mr. Roberson removed Michael Corda from the swimming pool and administered mouth-to-mouth resuscitation but was unable to revive him. Mr. Corda was carried to Pitt Memorial Hospital where further efforts to revive him were to no avail. Mr. Roberson testified on direct examination that it took him less than 2½ minutes to move the chairs and roll down the umbrellas. On cross-examination he testified that it was approximately 1½ minutes from the time at which he left the lifeguard station to move the chairs until he was at the side of Mr. Corda.

Dr. Ray H. Martinez, who was qualified as an expert in water safety, testified that in his opinion if there were 12 to 15 people

in the pool and swimmers were allowed to use the diving area and the shallow part of the pool, it would be very difficult for one person to guard the entire pool and the lifeguard "would have to be in the lifeguard stand." There was evidence that more than 15 people were in all areas of the pool at the time Mr. Corda allegedly drowned.

At the end of the plaintiff's evidence the court granted the defendants' motion for directed verdict. The plaintiff appealed.

*Gaylord, Singleton, McNally and Strickland, by Danny D. McNally; and McLawhorn and Mitchell, by Charles L. McLawhorn, Jr. and Elizabeth R. Warren, for plaintiff appellant.*

*Patterson, Dilthey, Clay, Cranfill, Sumner and Hartzog, by Ronald C. Dilthey and Robert W. Sumner, for defendant appellees.*

WEBB, Judge.

[1] We believe that Michael Corda was an invitee on the premises of Brook Valley Enterprises, Inc. at the time he allegedly drowned and the lifeguard owed him the duty to exercise the care that a reasonably prudent person who was serving as a lifeguard at the Brook Valley Country Club at the time would have exercised. *See Clark v. Roberts*, 263 N.C. 336, 139 S.E. 2d 593 (1965). We believe a reasonably prudent person acting as a lifeguard would have observed the pool for swimmers in distress and would have been alert to aid swimmers in distress. We hold that there was sufficient evidence for a jury to find (but not compel them to find) that the defendant Roberson did not observe the pool for swimmers in distress as a reasonably prudent man serving as a lifeguard would have done when he left his lifeguard station and went to fold up the chairs and umbrellas. We also believe it was a jury question as to whether the corporate defendant acted as a reasonable man operating a swimming pool would have acted in not having two lifeguards on duty when the lifeguard was responsible for maintaining the area around the pool. For these reasons, we hold it was error to grant the defendants' motion for directed verdict.

The defendants argue that under *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E. 2d 678 (1977) they were responsible

not only for the safety of the swimming pool but for the surrounding area and it was not negligent for Mr. Roberson to leave the lifeguard stand to secure the chairs and umbrellas when it appeared there would be a storm. As we have said, we believe it is a jury question as to the responsibility of the defendants for the safety of the surrounding area, whether the corporate defendant provided adequate personnel to meet its responsibilities, and whether Mr. Roberson acted as a reasonable man in leaving the lifeguard stand under the circumstances then existing.

There was some evidence that Mr. Corda died as the result of cardiac arrest. Defendants argue that if this was the case, the fact that he was not sooner removed from the pool would not be a proximate cause of his death. We believe this is a question for the jury. There was also some evidence that Mr. Corda died from a dry drowning. The evidence showed that in a dry drowning, as distinguished from a wet drowning, there is a laryngospasm which causes an obstruction in the voice box which prevents water and air from entering the lungs. The defendants contend that if there was a dry drowning, mouth-to-mouth resuscitation would have been ineffective and the failure to remove Mr. Corda from the pool would not have been a proximate cause of his death. We believe this should be decided by the jury.

[2] The plaintiff makes other assignments of error which we shall discuss because the questions raised may recur at a new trial. The plaintiff assigns error to the exclusion of her testimony as to statements she made to the defendant Roberson. Plaintiff would have testified if allowed to do so that Mr. Roberson told her sometime after the accident (1) "He couldn't blame me if I sued Brook Valley Country Club because of the drowning and that he would probably do the same thing himself"; (2) "He felt two lifeguards were needed on the day my husband drowned because of the large number of people using the pool"; (3) "Troy stated that he had asked Mr. Thomas many times for a private phone but Mr. Thomas never agreed to get one"; and (4) "Troy also stated that he had been asking Mr. Thomas for about three years for a board to use in case of spinal injury but never got one."

This testimony was not admissible against the corporate defendant. It was not made by an agent of the corporation as it

concerned an act then being done in his representative capacity. It was narrative of a past occurrence. *See Pearce v. Telegraph Co.*, 299 N.C. 64, 261 S.E. 2d 176 (1980). It may be an admission against the defendant Troy Roberson but it is not relevant to any of the acts of negligence alleged against him. It could be very prejudicial to the corporate defendant even with a limiting instruction. We hold it was properly excluded.

[3] The plaintiff contends it was error for the court to exclude the answers to interrogatories addressed to the president of the corporate defendant. These interrogatories dealt with the number of persons who were swimming in the pool at the time of the accident and the names and addresses of witnesses to the accident. The president was not at the pool at the time of the accident. He answered the interrogatories on information and belief. Clearly he did not have personal knowledge of the matters contained in his answers. This evidence was properly excluded.

[4] The plaintiff assigns error to the exclusion of certain testimony from Dr. Lawrence Harris, the pathologist who performed the autopsy on Michael Corda. During the direct examination of Dr. Harris the following colloquy occurred:

"Q. Dr. Harris, if a lifeguard had gotten to Mr. Corda within one minute of the beginning of the inhalation of water, in your opinion could there have been a successful resuscitation of Mr. Corda?

Mr. Dilthey: Objection.

Court: Overruled.

A. Yes. I think it's possible.

Mr. Dilthey: Objection and move to strike on what is possible.

Court: Well, sustained as to possible. Don't consider that, ladies and gentlemen. Don't consider that question and answer."

The jury was then excused and the following colloquy occurred:

"Q. Dr. Harris, do you have an opinion satisfactory to yourself based upon a reasonable medical certainty, as to whether or not Michael Corda could have been successfully

resuscitated had a lifeguard gotten to him within 30 seconds of the beginning of the inhalation of water?

. . . .

A. Yes, I do.

Q. What is that opinion?

A. That in all probability he could have survived. Yes."

The court refused to let the witness answer this question before the jury.

We hold it was error to exclude the testimony of Dr. Harris in answer to these two questions. We believe the rule as established by *Mann v. Transportation Co.*, 283 N.C. 734, 198 S.E. 2d 558 (1973) and *Walters v. Tire Sales and Service*, 51 N.C. App. 378, 276 S.E. 2d 729 (1981) is that an expert witness may conform his answer to his true opinion. Dr. Harris was an expert. As a pathologist he was better qualified than the jury to form an opinion as to the cause of death and what might have prevented it.

The defendant, relying on *Fisher v. Rogers*, 251 N.C. 610, 112 S.E. 2d 76 (1960) and *Garland v. Shull*, 41 N.C. App. 143, 254 S.E. 2d 221 (1979) argues that the answer to the first question quoted above was properly excluded because it was sheer speculation and conjecture. These two cases dealt with expert medical testimony as to the consequences of personal injury. They hold that in testifying to the consequences of a personal injury an expert may not testify as to possibilities but only in terms of the certain or probable consequences.

We believe that in light of *Mann*, both answers of Dr. Harris should have been admitted on the facts of this case. When both answers are considered together, Dr. Harris' testimony is to the effect that there is only a possibility that Mr. Corda could have been saved if the lifeguard had reached him within one minute of the time he went under water but there was a probability he could have been saved if a lifeguard had reached him within 30 seconds of the time he went under water. We believe this is testimony the jury should have in reaching its decision. If the only testimony had been as to possibility it may be that it should have been excluded pursuant to *Fisher* and *Garland*.

[5] Troy Roberson testified that using a stopwatch he had repeated from six to eight times his actions at the time of the alleged drowning. He testified that he left the lifeguard station each time and folded the chairs and the umbrellas and then went to the edge of the pool. He testified that based on this experiment it was his opinion that approximately 1½ minutes elapsed from the time he left his chair until he reached the edge of the pool and saw Mr. Corda. The plaintiff contends it was error to admit this testimony. She argues that the court admitted testimony as to the results of an experiment which did not correspond in all substantial particulars with those existing at the time of the disputed event. *See Green v. Wellons, Inc.,* 52 N.C. App. 529, 279 S.E. 2d 37 (1981). The plaintiff contends the weather conditions were not the same and there were not the same number of people in the pool. We believe these are factors which go to the weight to be given this testimony by the jury. This assignment of error is overruled.

[6] The plaintiff next assigns error to the exclusion of the emergency room report in regard to Mr. Corda. The parties stipulated to its authenticity and we believe it was error under *Sims v. Insurance Co.,* 257 N.C. 32, 125 S.E. 2d 326 (1962) to exclude it. We believe it was harmless error as the information contained in the report was received into evidence through testimony of witnesses. We pass on this assignment of error since there must be a new trial.

[7] The plaintiff also assigns error to the testimony of the defendant Troy Roberson as to his observation of Mr. Corda at times prior to 1 August 1980 when Mr. Corda was in the swimming pool. The plaintiff contends this testimony should have been excluded under G.S. 8-51 as testimony concerning a personal transaction with the deceased. We believe Mr. Roberson's observation of Mr. Corda while Mr. Corda was in the swimming pool was an act done while observing the deceased person and not done with the deceased person. It was not a personal transaction with the deceased. *See Brown v. Whitley,* 12 N.C. App. 306, 183 S.E. 2d 258 (1971). We hold this testimony was properly admitted. This assignment of error is overruled.

We do not discuss the plaintiff's other assignments of error as the questions they raise may not recur at a new trial.

New trial.

Judges ARNOLD and BRASWELL concur.